**Maurice E. JOHN, Appellant,**

v.

**Sandra S.K. JOHN (now GRIDER), Appellee.**

**No. 93–CA–1769–MR.**

Court of Appeals of Kentucky.

Jan. 13, 1995.

Marcia L. Sparks, Kevin P. Keeler, Sparks & Keeler, Louisville, for appellant.

Mark Mulloy, Mulloy, Walz, Wetterer, Fore & Schwartz, Louisville, for appellee.

Before EMBERTON, HUDDLESTON and McDONALD, JJ.

*OPINION*

McDONALD, Judge.

Maurice John has appealed from the post-dissolution judgment of the Jefferson Circuit Court which denied his request to terminate the required maintenance payments to his former wife, the appellee, Sandra Grider. The parties were married in 1965, the same year Maurice entered medical school. They supported themselves with Sandra's earnings and by significant contributions from Sandra's family. During the twenty-two-year marriage the couple amassed a substantial marital estate attributable to Maurice's successful ophthalmology practice and sums Sandra received from a family trust fund. Sandra also contributed by keeping the books for her husband's practice.

In 1987 Maurice filed a petition for dissolution of the parties' marriage. In February

1989, a decree of dissolution was entered reserving all issues of custody, visitation and support concerning the two infant children, division of property, maintenance, assignment of non-marital property and debts, and allocation of attorneys' fees and costs. Shortly before the trial on these issues was to commence, the parties executed a marital settlement agreement resolving all matters attendant to their dissolution.

Under this agreement, Sandra received the proceeds from the sale of the marital residence amounting to $1,128,000. Maurice received free of any claim from Sandra his medical practice, from which he earned over $1,000,000 annually, the real property where the practice is located and an adjacent piece of income-producing realty. The building housing Maurice's practice, the John Eye Clinic and the John–Kenyon Center for Eye Surgery, and the office building on the adjacent lot were constructed during the marriage with loans from Sandra's father, Ronald Kenyon. The agreement does not recite the value of the practice or the realty Maurice received; however, in his financial disclosure statement he valued the realty at $1,240,000. His expert appraised the medical practice as being worth $1,075,000. Sandra obtained two appraisals for the practice, one for $3,900,000; the other $3,815,953.

In addition to the proceeds of the sale of the marital home, half the personalty and an automobile, the agreement provided that Sandra would receive $1,320,000 in maintenance. It is the maintenance provision, following in its entirety, that is the source of this post-dissolution litigation:

### III.

### MAINTENANCE

Petitioner shall pay as maintenance to the Respondent the total sum of $1,320,-000, over the 10 year period commencing May 1, 1989 as follows:

1. Commencing May 1, 1989, and until April 30, 1991, Petitioner shall pay to Respondent as spousal maintenance a total of $100,000 per 12 month period, in equal monthly installments of $8,333.33 per month due on or before the first day of each month;

2. Commencing May 1, 1991, and through April 30, 1999, Petitioner shall pay to Respondent as spousal maintenance the total amount of $140,000 per 12 month period, in equal monthly installments of $11,666.67 per month due on or before the first day of each month.

The parties intend that all monies paid by Petitioner to Respondent pursuant to this Section III shall be includable as income by Respondent and shall be deductible as spousal maintenance by Petitioner. The parties further agree that the provisions of this Section III shall terminate upon the death of Respondent.

Petitioner agrees to apply for and to undergo a physical examination, if required, to purchase term life insurance on his life sufficient to cover the amount of maintenance which he has agreed to pay herein. Respondent shall be responsible for making all premium payments to secure and maintain said life insurance.

Maurice complied with this provision by making the scheduled payments through September 1992. He has made no maintenance payments since then, contending that Sandra's remarriage in February 1992 relieves him of his contractual obligations. Sandra moved to have Maurice held in contempt; Maurice moved to have his obligation terminated and sought the reimbursement of the $90,919.80 he had paid since Sandra's remarriage. On May 28, 1993, the court entered its judgment concluding that KRS 403.250(2) had no application in this case, as the parties' agreement called for lump-sum maintenance not subject to modification under the authority contained in *Dame v. Dame*, Ky., 628 S.W.2d 625 (1982). Further, the court held that Maurice could not escape his contractual obligation to pay the "total sum of $1,320,000" because the contract itself made no provision for termination of maintenance payments upon Sandra's remarriage as follow:

[KRS 403.250(2) ] itself provides that maintenance will terminate upon death or marriage "... unless otherwise agreed in writing...." In the case at bar, the parties

otherwise agreed in writing that the payments shall terminate upon death of [Sandra]. *Period.* The matter was expressly addressed by the parties in the agreement and the Court will not and cannot infer that which was obviously omitted. (Emphasis not added).

■ In his appeal, Maurice continues to argue that his obligation to pay maintenance to Sandra was terminated as a matter of law upon her remarriage. This argument is totally without merit. KRS 403.250(2), upon which Maurice relies, provides:

> *Unless otherwise agreed in writing* or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance. (Emphasis added).

As the trial court found, the parties "agreed in writing." The terms of this writing called for Maurice to pay Sandra "the *total sum* of $1,320,000" in installment payments over ten years. The *only* condition expressed in the parties' written and executed agreement that would excuse payment by Maurice was Sandra's death. The parties did not mention in their agreement the possibility of Sandra's remarriage and the document does not provide that or any other contingency as having any impact on the appellant's obligation to pay Sandra $1,320,000.

Maurice criticizes the trial court for relying on *Dame v. Dame, supra.* However, we believe the *Dame* case is controlling in this circumstance. *Dame* unequivocally holds, noting the purposes of KRS 403.110 and particularly the need for finality between divorcing parties, that lump-sum maintenance awards, paid in one installment or many installments, are not subject to modification. 628 S.W.2d at 625. Counsel for Maurice argued before the trial court that the maintenance at issue was not lump-sum maintenance but periodic maintenance. Nevertheless, the agreement specifically provides that Maurice will pay "the total sum of $1,320,000" in monthly payments of $8,333.33 for two years and then $11,666.67 for eight years. Clearly, Maurice agreed to pay a lump sum and this sum is not modifiable. *Id.* In an attempt to avoid the *Dame* decision,

Maurice also argued before the trial court that he was not seeking to "modify" the maintenance agreement but simply desired to "terminate" it. The lack of logic in that argument is obvious.

■ Maurice construes KRS 403.250(2) as requiring a property settlement agreement voluntarily entered into between divorcing parties to "expressly" provide for continuation of maintenance upon the remarriage of the spouse receiving maintenance and, in the absence of such an agreement, he argues, the obligation terminates automatically. Maurice's interpretation of the statute is, in our opinion, strained and unreasonable. The word "expressly" refers, not to the parties' agreement, but to a court's decree. Parties are allowed to reach their own agreements concerning all issues regarding their marital affairs. Other than agreements concerning the support, custody and well-being of infant children, the parties may agree to any resolution of their affairs subject only to the court's scrutiny for conscionability. Contracts entered into by divorcing parties may be and are binding and enforceable as any other contract. KRS 403.180(5). Thus, if any contractual obligation is conditioned on the other party's forbearance of the exercise of a particular act or right (*e.g.,* remarrying), such would have to be clearly set forth in the agreement to be enforceable. As with any other contract, and this one states it "*contains the entire understanding of the parties*," the court cannot add terms or conditions not set forth by the parties. This contract provided for termination of the installment payments *only* upon Sandra's death. Maurice's counsel acknowledged before the trial court that this condition was necessary in order to satisfy the Internal Revenue Service that Maurice was entitled to take a tax deduction for the amounts paid. Thus, the "entire understanding" of the parties did not expressly or even by implication contemplate that Sandra's remarriage would have any bearing on her right to receive from Maurice the total maintenance sum of $1,320,000. Simply, Maurice contracted to pay a fixed lump sum, the payment of which was deferred over a ten-year period. That the contract provided the sum could be paid

over time does not change its character. Sandra's right to receive the stated sum and Maurice's obligation to pay was fixed and vested at the time of its execution and was not affected by Sandra's remarriage.

Maurice's reliance on *Clark v. Clark*, Ky. App., 601 S.W.2d 614 (1980), is misplaced for the obvious reason that the maintenance award was made by the trial court in a decree after a trial on the issue of maintenance. The *Clark* case does not involve a contract between the parties. Under our statutory scheme, a court may not order one spouse to pay maintenance to the other unless the need for maintenance is clearly demonstrated. KRS 403.200. Rarely is it appropriate for a court to order lump-sum maintenance. Instead, it must award a sum to sustain the spouse at the standard of living obtained during the marriage. Also, as KRS 403.250(2) indicates, it would be unusual, considering the criteria to be met to establish maintenance, for maintenance to be awarded upon the death of either party or the receiving spouse's remarriage. There is a public policy that one should not have to provide sustenance or financial support for a former spouse who has remarried. Thus, if a trial court is inclined to provide for such, it must "expressly" state so in the decree.

> The language of KRS 403.250 is clear and unambiguous. The death of the obligor is a statutory contingency the occurrence of which terminates the obligation to pay future maintenance *unless the decree expressly provides* that the occurrence of said contingency does not terminate the obligation. (Emphasis added).

*Id.*, 601 S.W.2d at 615. While Maurice would like us to interpret the statute to require agreements to "expressly" address the issue of death or remarriage, the statute does not lend itself to such a tortured reading and nothing in *Clark* convinces us otherwise.

As stated earlier, parties can agree to terms that a court could not otherwise impose. For example, parties may agree to give the other their non-marital property, they may agree to pay child support beyond the age of majority, they may agree to take responsibility for all the debts. Parties frequently agree for tax purposes to pay or receive maintenance where no need exists when, in reality, they are accomplishing a division of property. A trial court cannot consider tax consequences in this regard, but may only award maintenance based on need. Unlike a decree, it really makes no difference whether an agreement denominates an obligation as payment of property or maintenance. If it is a fixed sum, it is vested and subject only to the contingencies expressed or which can be gleaned from the language of the contract itself. Maurice consistently argues that we must not look behind the contract; yet he insists we superimpose on or supplement the agreement with the statutory requirement pertaining to decrees. His reasoning is flawed and inconsistent with both the plain language of KRS 403.250(2) and well settled law of this Commonwealth.

Accordingly, finding no error in the judgment, it is affirmed.

All concur.