Edward MESSER, Appellant,

v.

Lydia F. MESSER, Appellee.

No. 2001–SC–0455–DG.

Supreme Court of Kentucky.

May 20, 2004.

Scott M. Webster, Jensen, Cessna & Benge, London, Counsel for Appellant.

Lydia Messer Smith, Barbourville, pro se.

COOPER, Justice.

Edward and Lydia Messer were married on September 21, 1985. They separated on March 3, 1998, and Edward filed a petition for dissolution of the marriage two days later. The marriage produced no children. At the time of their divorce, the parties had accumulated marital property consisting of furniture and appliances and two motor vehicles, and had incurred approximately $28,000.00 in marital debts. During a hearing before the domestic relations commissioner on September 24, 1998, the parties reached a verbal agreement with respect to a division of their property and debts and with respect to Lydia's claim for maintenance. The agreement was reduced to writing in the form of a decree entered on October 22, 1998. The decree was signed by the trial judge and by the respective attorneys, as "seen and agreed to" but the Messers, themselves, did not sign. With respect to spousal maintenance, paragraph 12 of the judgment recites:

> Petitioner is to pay maintenance to Respondent in the amount of $350.00 per month on the fifth day of each month until the fifth day of the month of Respondent's 62nd birthday, the first payment having been made by Petitioner on October 5, 1998.

Lydia's sixty-second birthday will occur on July 16, 2007.

Within a few months of the entry of the decree, Lydia married Edward's nephew. On May 14, 1999, Edward filed a motion to terminate his maintenance obligation pursuant to KRS 403.250 which provides, *inter alia:*

(1) Except as otherwise provided in subsection (6) of KRS 403.180,[1] the provisions of any decree respecting maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable....

(2) Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

█ The trial court denied the motion and the Court of Appeals affirmed. We now reverse the Court of Appeals because Lydia's remarriage terminated Edward's maintenance obligation by operation of law. KRS 403.250(2).

In 1972, the Kentucky General Assembly repealed many of our former divorce statutes, 1972 Ky. Acts, ch. 182, § 29, and replaced them with sections of the Uni-

---

1. KRS 403.180(6) provides that "[e]xcept for terms concerning the support, custody, or visitation of children, the decree may expressly preclude or limit modification of terms if the separation agreement so provides."

form Marriage and Divorce Act ("Uniform Act"), promulgated by the National Conference of Commissioners on Uniform State Laws in 1970, as amended in 1971. *Id.* §§ 1–15. KRS 403.250(2) is identical to Section 316(b) of the Uniform Act. *See* Unif. Marriage & Divorce Act § 316(b) (amended 1971, 1973), 9A U.L.A. 489–90 (1987). The Commissioners' Comment to Section 316(b) provides:

> Subsection (b) authorizes the parties to agree in writing or the court to provide in the decree that maintenance will continue beyond the death of the obligor or the remarriage of the obligee. In the absence of such an agreement or provision in the decree, this section sets the termination date for the obligation to pay future maintenance.

*Id.* at 490.

Virtually every court that has interpreted a statute modeled on Section 316(b) has held that the termination provision applies whether the maintenance is periodic or in a lump sum payable in installments, and that the intent to require maintenance to continue after the death of either party or the remarriage of the obligee will not be implied but must be expressly stated. *E.g., Diefenbach v. Holmberg,* 200 Ariz. 415, 26 P.3d 1186, 1187–88 (Ct.App.2001) (monthly payments for period of years; language that agreement was "non-modifiable" insufficient); *In re Marriage of Glasser,* 181 Cal.App.3d 149, 226 Cal.Rptr. 229, 230–31 (1986) (same); *Daopoulos v. Daopoulos,* 257 Ga. 71, 354 S.E.2d 828, 829–30 (1987) (monthly payments "until child reaches age eighteen" insufficient; "language must be clear and unequivocal"); *Moore v. Jacobsen,* 373 Md. 185, 817 A.2d 212, 214 (2003) (monthly payments for period of years; "nonmodifiable" clause insufficient—agreement not to terminate must be express); *Gunderson v. Gunderson,* 408 N.W.2d 852, 853 (Minn.1987)

(monthly payments for period of years; parol evidence of parties' intent insufficient); *Cates v. Cates,* 819 S.W.2d 731, 737 (Mo.1991) (en banc) (lump sum payable in monthly installments; language that maintenance was "contractual in nature, not subject to modification by the Court" insufficient); *MacNelly v. MacNelly,* 17 Va. App. 427, 437 S.E.2d 582, 583–84 (1993) (monthly payments for fixed period; inclusion of provision that maintenance *would terminate* upon death of either party did not create inference that maintenance *would not terminate* upon obligee's remarriage); *In re Marriage of Williams,* 115 Wash.2d 202, 796 P.2d 421, 425 (1990) (monthly payments for four years or until obligee obtained her bachelor's degree; language that maintenance provision was "not modifiable by a court" insufficient). In effect, KRS 403.250(2) inserts a provision for termination of maintenance upon the death of either party or the remarriage of the obligee into every decree unless the parties expressly agree otherwise in writing or the decree expressly provides otherwise. *Snow v. Snow,* 155 Ariz. 138, 745 P.2d 196, 200 (Ct.App.1987), *disapproved of on other grounds by Schroeder v. Schroeder,* 161 Ariz. 316, 778 P.2d 1212, 1219 (1989).

In *Clark v. Clark,* Ky.App., 601 S.W.2d 614 (1980), the decree provided that maintenance payments to the ex-wife would terminate upon her death or remarriage but made no mention of the contingency of the ex-husband's death. *Clark* held that in the absence of an express provision in the decree that maintenance *would not terminate* upon the death of the obligor, the obligor's death terminated the maintenance obligation. *Id.* at 616. Similar to the holding in *MacNelly, supra, Clark* also held that an agreement that maintenance *would not terminate* upon the obligor's death could not be inferred by the provi-

sion that maintenance *would terminate* upon·the death of the obligee. *Id.*

In *John v. John,* Ky.App., 893 S.W.2d 373 (1995), the maintenance obligor sought to invoke KRS 403.250(2) when the obligee remarried. The panel in *John* attempted to distinguish *Clark* on grounds that the maintenance obligation in *Clark* was established in a decree whereas the obligation in *John* was established in a written settlement agreement of the parties. The panel in *John* reasoned that the "expressly provided" language in KRS 403.205(2) applied to decrees, not agreements, and that by agreeing to pay maintenance for a specified period of time, the obligor had "agreed in writing" that maintenance would not terminate upon the obligee's remarriage. *Id.* at 376. The Supreme Court of Washington rejected this same reasoning in *Williams, supra,* by pointing out that when an agreement has been incorporated into a decree, the decree governs the rights of the parties, not the agreement. *Id.* at 206, 796 P.2d 421. *See also Cates, supra,* at 736 (agreement incorporated into decree becomes a part of the decree for purposes of determining whether obligation to pay future maintenance after death or remarriage was "expressly provided in the decree."). The opinion in *John, supra,* does not reveal whether the separation agreement construed in that case had been incorporated into a decree. *See* KRS 403.180(4)(a). Nevertheless, we reject the circular reasoning that by merely executing a written agreement to pay maintenance, the obligor has *ipso facto* "agreed in writing" that maintenance will not terminate upon the death of either party or the obligee's remarriage.

*John, supra,* also held that a maintenance provision for a specific, lump-sum amount payable over a fixed period of time cannot be terminated. *Id.* at 375–76 (citing *Dame v. Dame,* Ky., 628 S.W.2d 625, 627 (1982)). *Dame,* however, construed KRS 403.250(1) (modification because of changed circumstances), *see Low v. Low,* Ky., 777 S.W.2d 936, 937 (1989), not KRS 403.250(2) (termination upon death or remarriage unless agreed or decreed otherwise).

■ Similar to *Clark, supra,* in which the agreement only mentioned the *obligee's* death or remarriage, not the obligor's death, the agreement in *John, supra,* provided that maintenance would terminate upon the death of the obligee but contained no provision with respect to the obligee's remarriage. *Id.* at 374. Noting that the provision stated that the contract "contains the entire understanding of the parties," the opinion recites that "the court cannot add terms or conditions not set forth by the parties." *Id.* at 375. However, the provision that maintenance terminates upon the obligee's remarriage is added to the agreement by statute "[u]nless otherwise agreed in writing or expressly provided in the decree." KRS 403.250(2). *Cf. Snow v. Snow, supra,* at 200 (statute expresses public policy that maintenance terminates at death or remarriage, unless otherwise expressly provided). We conclude that absent a specific statement in the written agreement or in the decree that maintenance will not terminate upon the death of either party or the obligee's remarriage, the occurrence of one of those statutory contingencies terminates the maintenance obligation by operation of law. To the extent that *John* holds otherwise, it is overruled.

Our holding moots the parties' dispute as to whether the maintenance obligation in the case *sub judice* was established by an "agree[ment] in writing." *See Calloway v. Calloway,* Ky. App., 707 S.W.2d 789, 791 (1986) (agreement dictated to court reporter satisfied requirement of KRS 403.180(1) that separation agreement

be "written"). Whatever its original form, the agreement became a part of the decree when its provisions were adopted verbatim therein. The maintenance provision is silent as to whether it would terminate upon Lydia's remarriage. Thus, upon her remarriage, it terminated by operation of law. KRS 403.250(2).

Accordingly, we reverse the Court of Appeals and remand this case to the Knox Circuit Court for further proceedings in conformance with the content of this opinion.

LAMBERT, C.J.; JOHNSTONE, STUMBO, and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs by separate opinion, with GRAVES, J., joining that concurring opinion.

KELLER, Justice, concurring.

I concur in the majority opinion's holding, but write separately because I believe that, instead of merely distinguishing "the elephant in the room," *Dame v. Dame*,[1] this Court should take this opportunity to overrule it.

In *Dame*, this Court held that although open-end maintenance awards may be modified under KRS 403.250 on the basis of a change in circumstances, lump-sum maintenance awards are not subject to modification. A lump-sum award is a fixed and determinable amount and payable either in one lump-sum payment or in installments.[2] In the present case, maintenance is payable in a determinative amount, *i.e.*, "until the fifth day of the month of Respondent's 62nd birthday," and, thus, is properly characterized as lump-sum maintenance.

In *John v. John*,[3] the separation agreement provided for the husband to pay the wife as maintenance "the total sum of $1,320,000" in installment payments over a ten-year period. The agreement, however, did not contain a provision for termination of the husband's maintenance payments upon the wife's remarriage. The wife remarried before the expiration of the ten-year period, and the husband sought to terminate his maintenance obligation under the separation agreement. The Court of Appeals found *Dame* controlling precedent[4] and held that the husband had agreed to pay lump-sum maintenance, which is not modifiable. Accordingly, the Court of Appeals determined, under the aegis of *Dame*, that the wife's remarriage did not terminate maintenance.

1. Ky., 628 S.W.2d 625 (1982).

2. *Id.* at 627 (" 'Hence, we conclude that where, as here, maintenance is in a fixed and determinable amount to be paid either in a lump sum or is for a specific amount to be paid over a definite term, unless the power to do so is expressly reserved by the court, it is alimony in gross and has the finality of a judgment, and thus, is not subject to modification on the basis of a change in circumstances ....' ") (quoting *In Re Marriage of Gallegos*, 41 Colo.App. 116, 580 P.2d 838, 840 (1978), *overruled by Sinn v. Sinn*, 696 P.2d 333, 335 (Colo.1985)); 15 L. GRAHAM & J. KELLER, KENTUCKY PRACTICE, DOMESTIC RELATIONS LAW § 16.21 (2nd ed. West Group 1997) ("An award may be characterized as lump sum even though it is payable in installments. A lump sum award must involve a fixed and determinable amount."); BLACK'S LAW DICTIONARY 73 (7th ed.1999) (*"alimony in gross*. Alimony in the form of a single and definite sum not subject to modification.—Also termed *lump-sum alimony.*").

3. Ky.App., 893 S.W.2d 373 (1995)

4. *John*, 893 S.W.2d at 375 ("However, we believe the *Dame* case is controlling in this circumstance. *Dame* unequivocally holds, noting the purposes of KRS 403.110 and particularly the need for finality between divorcing parties, that lump-sum maintenance awards, paid in one installment or many installments, are not subject to modification.").

The majority overrules *John,* and I agree that *John* should be overruled. However, because *Dame* is the linchpin of *John,* I would also overrule *Dame* or at least sound its death knell louder than the majority does. I acknowledge that *Dame,* strictly speaking, construed subsection (1) of KRS 403.250, which deals with modification of maintenance upon a showing of "changed circumstances," and that *John* involved subsection (2), which provides for termination of maintenance upon death or remarriage. But, while the *John* Court may have broadened *Dame's* holding somewhat, *John's* holding hardly "came out of left field"; it simply relied upon *Dame's* conclusion that lump-sum maintenance awards should be treated differently from open-ended maintenance awards in that lump-sum maintenance awards should be construed as final and unalterable.[5]

The broader issue addressed in *Dame,* and the issue that I believe this Court should address again in this opinion today, was whether the legislature "in enacting KRS 403.250 intend[ed] to extend the jurisdiction of the circuit court so as to permit it to amend or modify a lump sum award of maintenance as well as an open-end award?"[6] In my opinion, this Court answered the question incorrectly in *Dame,* and we need not and should not wait another twenty-two (22) years for another case to provide the correct answer and overrule *Dame;* I would do so now for the benefit of the trial bench and the practicing bar.

GRAVES, J., joins this concurring opinion.