26 P.3d 1186

**William Paul DIEFENBACH, Petitioner/Appellant,**

v.

**Scott D. HOLMBERG, as successor trustee of the Geraldine M. Diefenbach Trust, Respondent/Appellee.**

No. 2 CA–CV 00–0174.

Court of Appeals of Arizona, Division 2, Department A.

June 28, 2001.

Vingelli & Bryson, by Kyle A. Bryson, Tucson, for petitioner/appellant.

Stephen A. U'Ren, Tempe, for respondent/appellee.

## OPINION

FLÓREZ, J.

¶1 Appellant William Diefenbach challenges the trial court's determination that the death of his former wife, Geraldine Diefenbach, did not terminate his obligation to pay spousal maintenance. William contends that a 1997 stipulated modification to the original marital settlement agreement granting Geraldine several additional years of spousal maintenance was not sufficiently explicit to preserve his obligation to pay spousal maintenance after Geraldine's death. Because this case presents only issues of law, we review the trial court's order de novo. *See Enterprise Leasing Co. of Phoenix v. Ehmke,* 197 Ariz. 144, 3 P.3d 1064 (App. 1999). And, because we agree with William, we vacate the trial court's order.

¶2 The marriage of William and Geraldine was dissolved in 1992. Paragraph 16 of their October 1992 marital settlement agreement[1] (MSA) provided, among other things, that William would pay Geraldine spousal maintenance in the amount of $5,000 per month for

seven years. Paragraph 16(c) stated that the payments would "terminate in the event of the death of either party or Geraldine's remarriage." In a cross-petition for order to show cause filed in February 1997, Geraldine sought to modify the decree to "increase [William's] spousal maintenance obligation in amount and duration." As a compromise, the Diefenbachs agreed to submit a range of terms for the trial court to consider in awarding additional spousal maintenance, to take effect after the term specified in the M.S.A. § expired in 1999. According to the minute entry of June 25, 1997, entered after an evidentiary hearing held on that date, William and Geraldine apparently[2] agreed that the new spousal maintenance obligation was "non-modifiable as to both amount and duration." And the subsequent order, filed on September 22, 1997, stated that the new spousal maintenance award would last for seventy-two months and was "non-modifiable in amount or duration for any reason by either party."

¶3 Geraldine died on January 4, 2000. After the trial court granted William's motion to terminate his monthly wage assignments for spousal maintenance, appellee Scott Holmberg, trustee of the Geraldine M. Diefenbach Trust, filed a petition for an order to show cause why the trial court should not reinstate the wage assignment. After a hearing, the trial court reinstated the wage assignment, concluding that, under the 1997 order, Geraldine's death did not terminate William's obligation to pay spousal maintenance.

¶4 Generally, "the obligation to pay future [spousal] maintenance is terminated on the death of either party or the remarriage of the party receiving maintenance." A.R.S. § 25–327(B). But a spousal maintenance obligation can survive the recipient's death or remarriage if the parties have executed a written agreement so providing or if the decree expressly so provides. *Id.; see In re Estate of Estelle,* 122 Ariz. 109, 593 P.2d 663 (1979). The language providing for the continuation of the obligation, however, must

---

1. The Diefenbachs' dissolution decree incorporated the marital settlement agreement.

2. The stipulation itself is not in the record before us.

be "direct or unmistakable" to satisfy § 25–327(B). *Estate of Estelle,* 122 Ariz. at 113, 593 P.2d at 667.

¶ 5 As evidenced by the 1997 stipulation modifying the M.S.A. and the related 1997 order, William and Geraldine agreed that their spousal maintenance agreement could not be modified for any reason. We do not agree with Holmberg's assertion, however, that the term "non-modifiable" is synonymous with "non-terminable." As a result, we conclude that the trial court erred in stating that "the parties expressly agreed and were ordered that death does not terminate the obligation to pay spousal maintenance." The order does not contain such language. As explained in *Black's Law Dictionary* 1004 (6th ed.1990), "modify" means "to alter; to change in incidental or subordinate features; enlarge, extend; amend; limit, reduce." "Terminate," on the other hand, means "[t]o put an end to; to make to cease; to end." *Id.* at 1471. Based on these definitions, we cannot say that the language providing that spousal maintenance was "non-modifiable" reflected the Diefenbachs' unmistakable intent to exempt their agreement from the effect of § 25–327(B).

¶ 6 Nor are we persuaded by Holmberg's reliance on *In re Marriage of Bennett,* 144 Cal.App.3d 1022, 193 Cal.Rptr. 113 (1983), and *In re Marriage of Harris,* 65 Cal.App.3d 143, 134 Cal.Rptr. 891 (1976). Holmberg accurately points out that both of these cases essentially state that the term "modification" encompasses the term "termination" because " 'termination' is nothing more than a 'modification' to zero." *Marriage of Bennett,* 193 Cal.Rptr. at 115, *quoting Marriage of Harris,* 134 Cal.Rptr. at 895. The California Court of Appeal, however, later rejected those cases and all "authority which could be construed as blurring the distinction[s] between modification, revocation, and termination," because ignoring the terms' distinctions "interjects unnecessary ambiguity and confusion into an area of law already fraught with problems" and contradicts clear legislative intent that the terms maintain their dis-

tinct meanings. *In re Marriage of Benjamins,* 26 Cal.App.4th 423, 31 Cal.Rptr.2d 313, 318 (1994).[3] In light of the clear differences between the definitions of "termination" and "modification" and our duty to interpret the language of § 25–327(B) in accordance with its ordinary meaning, *see Alaface v. National Investment Co.,* 181 Ariz. 586, 892 P.2d 1375 (App.1994), we agree with the reasoning in *Marriage of Benjamins* and conclude that the terms are not synonymous.

¶ 7 We find additional support for our interpretation of the trial court's 1997 order in *In re Marriage of Glasser,* 181 Cal.App.3d 149, 226 Cal.Rptr. 229 (1986). There, the paying spouse sought to terminate spousal maintenance to the recipient spouse after she remarried. Even though the parties' settlement agreement provided that "spousal support was to be 'non-modifiable for any reason whatsoever,' " the California Court of Appeal granted the paying spouse's request. *Id.* at 230. As the court explained:

> Wife argues that this language manifests an intent to continue the support after her remarriage. But language showing intent not to modify the agreement does not establish that the parties intended that Wife would continue to be supported after she remarried. A husband's obligation to his former wife ends by operation of law when she marries another. If the parties intend that support is to be "nonterminable for any reason whatsoever," they must say so in their agreement.

*Id.* We also find support for our interpretation in *Fye v. Zigoures,* 114 Ariz. 579, 562 P.2d 1077 (App.1977). There, this court determined that the spousal maintenance obligation terminated after the paying spouse's death despite nonmodification language incorporated into the dissolution decree based on an older version of § 25–327.

¶ 8 That the clause in the M.S.A. § providing that spousal maintenance would terminate upon the death of either party, was also not included in the 1997 order does not affect our analysis or conclusion. Section 25–327(B) clearly provides that spousal main-

---

3. Likewise, we also recognize that this court loosely interchanged the terms "modification" and "termination" in dictum in *Raley v. Wilber,* 122 Ariz. 336, 594 P.2d 1032 (App.1979). Accordingly, we now disapprove that language.

tenance terminates upon the death of either former spouse "[u]nless otherwise agreed in writing or expressly provided in the decree." "A statute is to be given such an effect that no clause, sentence or word is rendered superfluous, void, contradictory or insignificant." *Guzman v. Guzman*, 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App.1993). Because even the intentional omission of termination language in a written agreement is not equivalent to an affirmative, unambiguous statement that the parties intended the spousal maintenance obligations to continue, we hold that, when former spouses seek to avoid the application of § 25–327(B), they must make their intention unmistakably clear. *See Estate of Estelle.* Practically speaking, then, any intent not specifically set out in writing risks being ineffective. And, Holmberg's reliance on *Schroeder v. Schroeder*, 161 Ariz. 316, 778 P.2d 1212 (1989), is misplaced because that case, which allows spousal maintenance awards to be modified absent a statement that they are nonmodifiable, simply did not address the language requirements for making a spousal maintenance award survive the recipient spouse's death. *See* § 25–327(B).

¶ 9 Additionally, a comparison of the pertinent documents in the record before us supports our conclusion. Although Geraldine's cross-petition for order to show cause referred to and quoted several portions of paragraph 16 of the MSA, it neither referred to nor requested revision of subparagraph (c), which addresses termination of spousal maintenance. Moreover, the trial court's September 1997 order, drafted by Geraldine's attorney, specifically stated that the parties' M.S.A. § "shall remain in full force and effect, except as modified herein." Thus, contrary to Holmberg's contention, the 1997 order did not "specifically delete[ ][the] prior provision terminating spousal maintenance in cases of death or remarriage." Because neither Geraldine's cross-petition nor the 1997 stipulation and resulting order expressly referred to, modified, or deleted paragraph 16(c) of the MSA, Holmberg's proposition that "non-modifiable" must mean "non-terminable" is not self-evident.

¶ 10 Lastly, Holmberg contends that "the Superior Court did not have jurisdiction to grant the relief [William] sought" because, under A.R.S. § 25–317(G), "the parties agreed ... that the Maintenance Award was non-modifiable." Section 25–317(G) states that the "entry of a decree that ... provides that its maintenance terms shall not be modified prevents the court from exercising jurisdiction to modify the decree ... regarding maintenance." Even assuming that § 25–317(G) applies to orders entered subsequent to a decree, Holmberg offers no authority to support his contention that language specifying that spousal maintenance is nonmodifiable divests a trial court of jurisdiction to terminate spousal maintenance. Because, as we previously explained, modification and termination are distinct concepts, we conclude that the trial court retained limited jurisdiction to address the issue of termination. *Cf. Guzman* (holding that rule prohibiting retroactive modification of child support did not apply when parent's obligation to pay support terminated by operation of law on marriage of emancipated child).

¶ 11 Because we have determined that William's obligation to pay spousal maintenance terminated by operation of law on Geraldine's death, *see* § 25–327(B), and because there was no clear, express intent otherwise to prevent termination despite the nonmodification language, we vacate the trial court's June 2000 order reinstating the wage assignment against William.

BRAMMER, Jr., Presiding Judge,
PELANDER, Judge, concurring.