131 P.3d 1067

**In re the Marriage of Jana WALDREN, Petitioner–Appellee,**

and

**State of Arizona ex rel. The Department of Economic Security, Appellee,**

v.

**George WALDREN, Respondent– Appellant.**

No. 1 CA–CV 04–0466.

Court of Appeals of Arizona, Division 1, Department E.

April 20, 2006.

Jana Larson (fka Waldren), Petitioner–Appellee, In Propria Persona.

Terry Goddard, Attorney General By Kathryn E. Harris, Assistant Attorney General, Child Support Enforcement Section, Phoenix, Intervenor–Appellee.

Gillespie & Associates, P.C. By DeeAn Gillespie, Phoenix, Attorneys for Respondent–Appellant.

## OPINION

GEMMILL, Judge.

¶ 1 In this opinion we address whether a former spouse may seek relief under Arizona Rule of Civil Procedure 60(c)(5) from a divorce decree imposing a non-modifiable spousal maintenance obligation. George Waldren ("Father") appeals the trial court's order denying his motion to set aside portions of a decree entered on February 5, 2002 that ordered him to pay spousal maintenance to Jana Waldren ("Mother"). Because we conclude that Father may seek relief under Rule 60(c)(5), we vacate the trial court's order denying Father's motion for relief from the spousal maintenance obligation and remand for a consideration of Father's motion under Rule 60(c)(5).

¶ 2 In addition, Father appeals the court's order denying his request for a further hearing on the distribution of Social Security disability benefits for their children. We affirm the trial court's denial of a further hearing regarding Social Security benefits.

## FACTS AND RELEVANT PROCEEDINGS

¶ 3 Father and Mother were married in 1986 and have three minor children. Mother filed for divorce in September 1999. The trial court issued temporary orders requiring Father to pay spousal maintenance and child support.

¶ 4 The divorce trial occurred in February 2002. Father appeared telephonically and was not represented by counsel. Mother's counsel advised the trial court that the parties had reached a settlement agreement. The trial court questioned Father about the agreement and, based on his responses, determined that he had voluntarily consented to the agreement and that it was binding. The court then signed and filed the divorce decree, which required Father to pay $1000 per month in non-modifiable spousal maintenance for sixty months, $1159 per month in child support, fifty-seven percent of unreimbursed medical expenses, and $60,000 for Mother's attorneys' fees. The decree also issued a permanent injunction based on Mother's order of protection. In addition, the decree found that Father was in contempt of court as the result of his failure to pay *pendente lite* child support and spousal maintenance. The decree further ordered that if Father failed to follow the conditions set forth to purge that contempt, Mother could advise the court of Father's breach by affidavit and Father would be immediately incarcerated.

¶ 5 Father failed to pay child support and spousal maintenance as required. In April 2002, the court ordered his incarceration. Father's employer paid the purge amount to have him released. Father subsequently moved under Rule 60(c) to set aside the decree, arguing that he had signed it only because he feared incarceration. The court denied his motion, and Father did not timely appeal from this denial.

¶ 6 In February 2003, Father filed a motion for child support modification and Mother filed a motion for contempt. After an evidentiary hearing and written closing arguments, the trial court in September 2003 granted Mother's motion for contempt and ordered Father to pay $1000 per month in spousal maintenance as the divorce decree provided, $287 per month in modified child support effective March 1, 2003 through December 31, 2003, increasing to $306 in modified child support after January 1, 2004, plus $250 per month for his existing judgment for arrearages.

¶ 7 Father appealed these rulings. In a memorandum decision, this court affirmed the trial court's order finding Father in contempt, requiring him to purge himself of

contempt, and modifying his child support obligations. *See Waldren v. Waldren,* 1 CA–CV 03–0750 (Ariz.App. Nov. 18, 2004) (mem.decision).

¶ 8 In the meantime, it was determined that Father was disabled, and in February 2004, the Social Security Administration awarded him a monthly disability benefit of $1376. Based on Father's disability, each of his children was also awarded a monthly benefit of $229, resulting in a total of $687 to be received monthly by Mother as the designated representative payee on behalf of the three children.

¶ 9 Father filed a second motion seeking relief under Rule 60(c).[1] Father asked the court to set aside the portions of the decree allowing Father to be found in contempt based solely on Mother's affidavit. He also argued that under Rule 60(c)(5), because he was now permanently disabled and had experienced changed financial circumstances, the portions of the decree of dissolution pertaining to spousal maintenance should be set aside. In addition, Father requested a further hearing pursuant to *Hamblen v. Hamblen,* 203 Ariz. 342, 54 P.3d 371 (App.2002), to determine whether the children's Social Security benefits should be distributed to each parent in proportion to their parenting time. Lastly, he contended that a portion of the $687 per month Social Security benefit for the children should be applied toward his child support and spousal maintenance arrearages.

¶ 10 The court set aside the provision in the decree permitting Father to be held in contempt and incarcerated solely on the basis of an affidavit from Mother. The court denied Father's request to set aside the provision of the decree pertaining to spousal maintenance. In addition, the court found that under the Arizona Child Support Guidelines § 26(B), Appendix to Arizona Revised Statutes ("A.R.S.") section 25–320 (Supp.2005)[2], any payment toward child support in excess of the court-ordered obligation will not be treated as an arrearage payment or a future support payment. Finally, the court denied Father's request based on *Hamblen* for a further hearing on the allocation of the disability payments for the children.

¶ 11 Father appeals. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and –2101(B) (2003).

## MODIFICATION OF SPOUSAL MAINTENANCE

■ ¶ 12 Father argues on appeal that the trial court erroneously denied those portions of his second Rule 60(c) motion in which he asked the court to set aside the spousal maintenance obligation and to order a modified allocation of the children's disability benefits. We generally apply an abuse of discretion standard when reviewing a trial court's denial of relief under Rule 60(c), *see Birt v. Birt,* 208 Ariz. 546, 549, ¶ 9, 96 P.3d 544, 547 (App.2004), and also when reviewing trial court decisions on modification or termination of spousal maintenance and child support. *See Van Dyke v. Steinle,* 183 Ariz. 268, 273, 902 P.2d 1372, 1377 (App.1995) (spousal maintenance); *In re Marriage of Robinson & Thiel,* 201 Ariz. 328, 331, ¶ 5, 35 P.3d 89, 92 (App.2001) (child support). Because Father's contention regarding the potential of Rule 60(c)(5) relief raises a question of law, however, our review is *de novo. Hamblen,* 203 Ariz. at 344, ¶ 6, 54 P.3d at 373; *Van Dyke,* 183 Ariz. at 273, 902 P.2d at 1377.

¶ 13 By statute, a "decree respecting maintenance or support may be *modified or terminated* only on a showing of changed circumstances that are substantial and continuing." A.R.S. § 25–327(A) (Supp.2005) (emphasis added). Based on his changed financial circumstances and his contention that his consent to the decree was given under duress, Father argues that it was an abuse of discretion for the court to deny his request for a modification of or relief from the spousal maintenance obligation.

¶ 14 Regarding Father's argument that he did not voluntarily agree that the spousal

---

1. This motion, which resulted in the rulings challenged in this appeal, was heard by The Honorable Cari A. Harrison. The prior superior court rulings were made by other judges.

2. For convenience, we cite to the current version of the statutes and guidelines, which is effectively the same as that in effect at the relevant times.

maintenance obligation would be non-modifiable, we note again that Father filed a prior Rule 60(c) motion to set aside the decree on May 31, 2002, arguing that the decree was void because his consent was only given due to the threat of incarceration by Mother's attorney. The trial court denied this motion, and Father did not timely appeal that decision. In light of Father's initial appeal that resulted in the decree being affirmed plus the trial court's denial of his first Rule 60(c) motion and his failure to timely appeal that ruling, we conclude that the issue of the voluntariness of Father's agreement has been determined with finality against him.

¶ 15 Regarding Father's argument based on changed circumstances, the trial court denied relief based on A.R.S. § 25–319(C) (Supp.2005), which provides:

> If both parties agree, the maintenance order and a decree of dissolution of marriage or of legal separation may state that its maintenance terms shall not be *modified.*

(Emphasis added.) The decree in this case states:

> Husband shall pay Wife spousal maintenance in the sum of $1000 per month for sixty (60) months.... Spousal maintenance shall terminate upon Wife's death.... In accordance with the parties' agreement, spousal maintenance shall not be subject to *modification.*

(Emphasis added.) The trial court essentially concluded that relief under Rule 60(c)(5) was legally foreclosed by the statutorily-authorized order making the spousal maintenance obligation non-modifiable.

¶ 16 Section 25–319(C) supports the non-modifiable nature of the spousal maintenance obligation, as does A.R.S. § 25–317(G) (Supp. 2005), which states that entry of such a decree "prevents the court from exercising jurisdiction to *modify* the decree ... regarding maintenance."[3] (Emphasis added.) We agree with the trial court that, under §§ 25–319(C) and –317(G) as applied here, the

spousal maintenance order remains non-modifiable under ordinary circumstances. Therefore, modification under A.R.S. § 25–327(A) is not available.

¶ 17 This does not complete our inquiry, however. Father contends that he is entitled to seek *relief* from the spousal maintenance obligation under Rule 60(c)(5), which provides that if "it is no longer equitable that [a] judgment should have prospective application," "the court may *relieve a party ... from a final judgment,* order or proceeding" "upon such terms as are just." Ariz. R. Civ. P. 60(c)(5) (emphasis added); *cf. Diefenbach v. Holmberg,* 200 Ariz. 415, 417, ¶¶ 5–7, 26 P.3d 1186, 1188 (App.2001) (distinguishing between modification and termination of spousal maintenance). To determine if Father is entitled to invoke Rule 60(c)(5) to obtain relief, we must first consider whether this decree ordering spousal maintenance has "prospective application" within the meaning of the rule. We must then decide whether the trial court has jurisdiction to consider granting relief under Rule 60(c)(5) even though the spousal maintenance was ordered to be non-modifiable.

### Prospective Application

¶ 18 Father may seek relief under this portion of Rule 60(c)(5) only if the spousal maintenance obligation has "prospective application." The parties have not cited nor have we discovered any Arizona decision specifically addressing whether a non-modifiable spousal maintenance order under our current marriage dissolution statutes has prospective application within the meaning of Rule 60(c)(5).

¶ 19 In *Lloyd v. Lloyd,* this court held that Rule 60(c)(5) is inapplicable to modify a *lump sum* alimony or property settlement award.[4] 23 Ariz.App. 376, 533 P.2d 684 (1975), *superseded in part by statute,* 1973 Ariz. Sess. Laws, ch. 139, § 2, *as recognized in Fye v. Zigoures,* 114 Ariz. 579, 581, 562 P.2d 1077, 1079 (App.1977). The court reasoned that a

**3.** The language of these subsections, 25–317(G) and –319(C), was enacted in 1996. *See 1996 Ariz. Sess. Laws, ch. 145, §§ 7–8.*

**4.** The specific provision in *Lloyd* provided:

> [Husband shall] pay to [Wife] the sum of $6,000.00, payable in installments of $100.00 or more each month beginning August 1, 1971 until paid....
> 23 Ariz.App. at 377, 533 P.2d at 685.

lump sum award, even if paid in monthly installments thereafter, has no "prospective application" and therefore does not qualify for Rule 60(c)(5) relief. *Lloyd*, 23 Ariz.App. at 377, 533 P.2d at 685.

¶ 20 Two years after *Lloyd*, another panel of this court held in *Fye* that a motion for Rule 60(c)(5) relief from a non-modifiable lump sum spousal maintenance award was improperly denied after the recipient spouse had died. 114 Ariz. at 580, 562 P.2d at 1078. Although the court did not expressly address the requirement of "prospective application" for relief under Rule 60(c)(5), the court distinguished *Lloyd* as based on a prior statutory scheme. *Id.* at 581, 562 P.2d 1077, 562 P.2d at 1079. In 1973, subsection (B) was added to A.R.S. § 25–327 to provide for termination of spousal maintenance upon the death or remarriage of either party unless the parties specifically agreed otherwise. The *Fye* court reasoned that § 25–327(B) was intended to apply to all maintenance awards, no matter whether lump sum or periodic. *Id.* at 580–81, 562 P.2d at 1078–79. *Fye* supports our application of Rule 60(c)(5) here because the court in *Fye* decided that a lump sum spousal maintenance obligation, made non-modifiable by its terms, could nonetheless be challenged under Rule 60(c)(5).

¶ 21 Additionally, in contrast to the wife in *Lloyd*, Mother was not awarded a lump sum. Rather, she was granted continuing support in the form of monthly payments for a specific term of months, with the contingency that the obligation would terminate if she died. *See supra* ¶ 15. Because of these distinctions and the change in the law noted in *Fye*, we conclude that the holding in *Lloyd* is not applicable here.[5]

¶ 22 In contrast to spousal maintenance, money judgments and divisions of community property are final adjudications and ordinarily do not have the quality of "prospective application" required under Rule 60(c)(5).

*See, e.g., Birt*, 208 Ariz. at 550, ¶ 13, 551, ¶ 19, 96 P.3d at 548, 549. Such judgments—that award damages or divide community property—address past and current obligations and resolve them with finality. Spousal maintenance, however, addresses primarily future needs and is based on a variety of considerations including the comparative earning capacities and financial resources of the parties. *See* A.R.S. § 25–319. And even a non-modifiable maintenance obligation may lack a degree of finality due to the existence of contingencies. *Cf. Raley v. Wilber*, 122 Ariz. 336, 337, 594 P.2d 1032, 1033 (App.1979) (holding that a spousal maintenance agreement constitutes a non-modifiable lump sum "only if it affirmatively negates modifiability for death or remarriage"), *disapproved on other grounds by Diefenbach*, 200 Ariz. at 417 n. 3, ¶ 6, 26 P.3d at 1188 n. 3. Here the spousal maintenance obligation would cease upon Mother's death, whereas a money judgment or a decree that divided marital property would continue to be enforceable after death.

¶ 23 We conclude, for these reasons, that Father's spousal maintenance obligation has "prospective application" within the meaning of Rule 60(c)(5).

### Possibility of Relief under Rule 60(c)(5) from Non–Modifiable Spousal Maintenance Obligation

¶ 24 Rule 60(c) relief is based upon the court's equitable powers. *See generally* Restatement (Second) of Judgments § 79 (1982) (court may entertain independent action in equity for relief from judgment). "[I]t is clear that [Rule 60(c)] ... is primarily intended to allow relief from judgments that ... are unjust because of *extraordinary circumstances that cannot be remedied by legal review*." *Craig v. Superior Court*, 141 Ariz. 387, 389, 687 P.2d 395, 397 (App.1984) (quoting *Tippit v. Lahr*, 132 Ariz. 406, 408–09, 646

5. In *Birt*, this court held that a dissolution decree dividing the community assets and liabilities did not have "prospective application" and therefore Rule 60(c)(5) was not applicable. 208 Ariz. at 550, ¶ 13, 96 P.3d at 548. Although the dispute in *Birt* did not involve spousal maintenance, a footnote in *Birt* states that *Lloyd* continues to stand for the proposition that "Rule 60(c)(5) [is] inapplicable to modify maintenance." 208 Ariz. at 550 n. 3, ¶ 16, 96 P.3d at 548 n. 3. We conclude, however, that the precise holding in *Lloyd* applied only to lump sum alimony awards and that this comment in *Birt* is dicta.

P.2d 291, 293–94 (App.1982)) (emphasis added).

¶ 25 Relief under Rule 60(c)(5) is not incompatible with the limits on modification imposed by A.R.S. §§ 25–319(C) and –317(G). Whereas §§ 25–319(C) and –317(G) prevent modification under § 25–327(A) for *ordinary* changed circumstances, Rule 60(c)(5) may allow equitable relief from a judgment when *extraordinary* changed circumstances exist. *See Diefenbach,* 200 Ariz. at 418, ¶ 10, 26 P.3d at 1189 (explaining that although § 25–317(G) divests the court of jurisdiction to *modify* maintenance, the "trial court retain[s] limited jurisdiction to address the issue of *termination*" (emphasis added)); *Fye,* 114 Ariz. at 580, 562 P.2d at 1078. The party seeking relief must show extraordinary and unforeseeable circumstances that render prospective application of the judgment inequitable. *See* Ariz. R. Civ. P. 60(c)(5); *Craig,* 141 Ariz. 387, 389, 687 P.2d 395, 397. Such relief should be granted only very sparingly.

¶ 26 Accordingly, the trial court on remand may consider whether Father's position fits within the purposes of Rule 60(c)(5) relief. Ordinary legal review for modification of his spousal maintenance obligation is unavailable, but he claims to have encountered extraordinary circumstances involving disability. If it is shown upon remand that Father's disability was not contemplated by the parties and has extraordinarily affected his ability to fulfill his spousal maintenance obligation, the trial court will have jurisdiction and equitable discretion to grant relief under Rule 60(c)(5) notwithstanding the unavailability of modification under A.R.S. §§ 25–327(A), –319(C), and –317(G).[6]

¶ 27 For these reasons, we vacate the decision of the trial court that the order making spousal maintenance non-modifiable foreclosed any possibility of relief under Rule 60(c). This matter is remanded to the trial court for a determination under Rule 60(c)(5) of

whether justice and equity warrant relief from the spousal maintenance requirement due to Father's disability status.

## DISTRIBUTION OF CHILDREN'S SOCIAL SECURITY BENEFITS

■ ¶ 28 At the hearing on Father's motion to set aside the decree, Father cited *Hamblen* and requested a further hearing for the purpose of allocating the children's Social Security benefits to each parent in proportion to their parenting time.[7] The trial court denied Father's request. Because the appeal of this ruling presents a legal question, our review is *de novo. Hamblen,* 203 Ariz. at 344, ¶ 6, 54 P.3d at 373; *Van Dyke,* 183 Ariz. at 273, 902 P.2d at 1377.

¶ 29 The allocation principle recognized by the majority opinion in *Hamblen,* 203 Ariz. at 346–47, ¶ 24, 54 P.3d at 375–76, is not applicable here. *Hamblen* involved adoption subsidies, not Social Security disability payments. Adoption subsidies, in contrast to disability payments, are not a replacement for lost parental income. *Id.* at 346, ¶ 17, 54 P.3d at 375. Moreover, the *Hamblen* majority concluded that the adoption subsidies would not be a credit against a parent's child-support obligations. *Id.* at 345, ¶ 16, 54 P.3d at 374. Here, the Social Security disability payments for the children are credited toward Father's child support obligations. *See* Ariz. Child Support Guidelines § 26(B)(1); *Clay,* 208 Ariz. 200, 202, ¶ 7, 92 P.3d 426, 428. Additionally, an adjustment for costs associated with parenting time has, presumably, been considered in the calculation of Father's child support obligations. *See* Ariz. Child Support Guidelines § 11. Because of these distinctions, we find *Hamblen* inapposite here.

¶ 30 We conclude, therefore, that the trial court correctly denied Father's request for a further hearing, based on *Hamblen,* to con-

---

6. We express no opinion whether Father is entitled to relief under Rule 60(c)(5).

7. In addition, Father argued that the portion of the Social Security benefits paid to Mother on behalf of the children that exceeds his child support obligation be applied to Father's child support and spousal maintenance arrearages. The

trial court ruled that any Social Security disability benefits paid in excess of the court-ordered child support obligations would not be credited toward Father's arrearages. *See* Ariz. Child Support Guidelines § 26(B)(2); *Clay v. Clay,* 208 Ariz. 200, 202–03, ¶¶ 8–9, 92 P.3d 426, 428–29 (App.2004). Father is not asserting this argument on appeal.

sider allocation of the disability payments in proportion to parenting time.

## CONCLUSION

¶ 31 The judgment of the trial court is affirmed regarding the denial of Father's request to have a further hearing on the distribution of Social Security disability payments to the children and vacated regarding Father's request for modification of or relief from his spousal maintenance obligation. We remand for a consideration of Father's request under Rule 60(c)(5) for relief from the spousal maintenance obligation.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge, and JEFFERSON L. LANKFORD, Judge.