SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| In re the Marriage of: | ) Arizona Supreme Court |
| | ) No.  CV-07-0019-PR |
| JANA WALDREN, | ) |
| | ) Court of Appeals |
| Petitioner-Appellee, | ) Division One |
| | ) No.  1 CA-CV 04-0466 |
| and | ) |
| | ) Maricopa County |
| STATE OF ARIZONA ex rel. THE | ) Superior Court |
| DEPARTMENT OF ECONOMIC SECURITY, | ) No.  DR1999-015441 |
| | ) |
| Appellee, | ) |
| | ) |
| v. | ) **O P I N I O N** |
| | ) |
| GEORGE WALDREN, | ) |
| | ) |
| Respondent-Appellant. | ) |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Cari A. Harrison, Judge

**AFFIRMED**
_____

Opinion of the Court of Appeals, Division One
212 Ariz. 337, 131 P.3d 1067 (2006)

**VACATED IN PART**
_____

FRANKS & SHELDON, P.C.                                      Phoenix
     By   Todd Franks
          Paula G. Kirby

And

THE CAVANAGH LAW FIRM, P.A.                                 Phoenix
     By   Philip C. Gerard
          Helen R. Davis
          Christopher Robbins

And

LAW OFFICES OF ROBERT JENSEN, P.L.C.                    Phoenix
      By    Robert A. Jensen
Attorneys for Jana Charisse Waldren

GILLESPIE, SHIELDS & ASSOCIATES, P.C.                   Phoenix
      By    DeeAn Gillespie
            Mark A. Shields
Attorneys for George Waldren

BARRY L. BRODY, P.C.                                    Phoenix
      By    Barry L. Brody
Attorneys for Amicus Curiae Arizona Chapter –
American Academy of Matrimonial Lawyers

STATE BAR OF ARIZONA                                    Phoenix
      By    Robert B. Van Wyck, Chief Bar Counsel
Attorneys for Amicus Curiae State Bar of Arizona

_____


**B E R C H**, Vice Chief Justice

¶1      We have been asked to decide whether a statutorily non-modifiable spousal maintenance provision in a decree of dissolution of marriage is subject to termination under Arizona Rule of Civil Procedure 60(c)(5).  We hold that it is not.

### I.  FACTS AND PROCEDURAL HISTORY

¶2      In 1986, George Waldren ("Husband") and Jana Larson ("Wife") married.  Thirteen years and three children later, Wife petitioned to dissolve the marriage.  In February 2002, the superior court ended the marriage by entering a twelve-page decree, which included the parties' settlement agreement.  The decree required Husband to pay child support, attorneys' fees,

- 2 -

and spousal maintenance. The seventh provision of the decree set forth the maintenance agreement and purported to make the spousal maintenance payments non-modifiable:

> 7. *Spousal Maintenance.* Husband shall pay Wife spousal maintenance in the sum of $1,000.00 per month for sixty (60) months, commencing March 1, 2002 and continuing on the 1st day of each month thereafter. Spousal maintenance shall terminate upon Wife's death, but shall not terminate upon Husband's death or upon Wife's remarriage. *In accordance with the parties' agreement, spousal maintenance shall not be subject to modification.*

(Emphasis added.)

**¶3** During the following months, Husband failed to fulfill some of his obligations, and Husband and Wife returned to court on several occasions. The Social Security Administration declared that Husband had become disabled in 2003 and awarded him $1,376 per month in disability benefits. In November 2003, based in part on his disability, Husband moved under Rule 60(c) to set aside provisions of the decree, alleging that his support and maintenance obligations were excessive in light of his reduced income. In May 2004, the superior court denied Husband's request to terminate the spousal maintenance award.[1]

**¶4** The court of appeals vacated the superior court

---

[1] In the superior court and court of appeals, Husband also sought to modify the distribution of Social Security benefits to his children. *Waldren v. Waldren*, 212 Ariz. 337, 342-43, ¶¶ 28-30, 131 P.3d 1067, 1072-73 (App. 2006). That issue is not before this court.

judgment and found that Husband was entitled to an evidentiary hearing under Rule 60(c)(5) to determine whether extraordinary circumstances justified prospective relief from the spousal maintenance provision. *Waldren v. Waldren*, 212 Ariz. 337, 343, ¶ 31, 131 P.3d 1067, 1073 (App. 2006). The court reasoned that while Arizona Revised Statutes ("A.R.S.") sections 25-317(G) and 25-319(C) (2007)[2] protect non-modifiable spousal maintenance orders from modification under *ordinary* circumstances, courts may afford relief under Rule 60(c)(5) in *extraordinary* circumstances. *Waldren*, 212 Ariz. at 342, ¶ 25, 131 P.3d at 1072. It concluded that A.R.S. §§ 25-317(G) and 25-319(C) do not prevent courts from exercising equitable powers under Rule 60(c)(5). *Id.* ¶¶ 26-27.

¶5 We granted Wife's petition for review because this case presents an issue of statewide importance. *See* ARCAP 23(c)(3). We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II. DISCUSSION

¶6 Whether the court may grant equitable relief from purportedly non-modifiable spousal maintenance provisions implicates two issues: first, whether A.R.S. §§ 25-317(G) and

---

[2] This opinion cites the current version of A.R.S. §§ 25-317 and 25-319. Neither statute has been changed since this case was filed in 2003.

25-319(C) deprive the court of jurisdiction to modify or terminate such spousal maintenance provisions; second, if so, whether equitable relief may nonetheless be had under Rule 60(c)(5). Both inquiries present questions of law, which we review de novo. *See Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).

## A. Jurisdiction to Modify or Terminate

¶7 Interpreting a statute requires us to "look to its language as 'the best and most reliable index of [the] statute's meaning.'" *Roubos v. Miller*, 214 Ariz. 416, 417, ¶ 7, 153 P.3d 1045, 1046 (2007) (quoting *N. Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 303, ¶ 9, 93 P.3d 501, 503 (2004)). "We give words their ordinary meaning unless the legislature clearly intended a different meaning." *Id.* at 417-18, ¶ 7, 153 P.3d at 1046-47 (citing *Mail Boxes, etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995)).

¶8 In Arizona, dissolution of marriage proceedings are creatures of statute, and jurisdiction to decide such cases is conferred on the courts by the legislature. *Weaver v. Weaver*, 131 Ariz. 586, 587, 643 P.2d 499, 500 (1982). The dissolution statutes require the filing of a petition and the entry of a decree. A.R.S. §§ 25-311, -312 (2007). Unlike other types of court orders, however, decrees of dissolution generally remain subject to the court's continuing jurisdiction to modify

maintenance and support provisions. A.R.S. §§ 25-327, -319(D). If the parties' circumstances substantially change, courts generally may modify or terminate support and maintenance provisions accordingly. The legislature provided for changes in support and maintenance orders in A.R.S. § 25-327(A), which reads as follows:

> Except as otherwise provided in § 25-317, subsections F and G, the provisions of any decree respecting maintenance or support may be modified or terminated only on a showing of changed circumstances that are substantial and continuing . . . .

¶9 An exception to this rule lies at the heart of this case. The legislature has expressly provided that parties may specifically agree to prospectively deprive courts of the ability to modify spousal maintenance provisions of a decree, even if substantial changes in circumstances occur. Section 25-319(C) provides that "[i]f both parties agree, the maintenance order and a decree of dissolution of marriage . . . may state that its maintenance terms shall not be modified." Such an agreement "prevents the court from exercising jurisdiction to modify the decree and the separation agreement regarding maintenance." A.R.S. § 25-317(G). These statutes demonstrate a clear legislative directive that once a decree meeting the statutory requirements has been entered, courts lack jurisdiction to modify the decree regarding spousal maintenance. A.R.S. §§ 25-319(C), -317(G).

¶10     This case requires a straightforward application of this statutory framework. In 2002, Husband and Wife entered into a non-modifiable spousal maintenance agreement that is contained in the twelve-page decree dissolving the parties' marriage. Later, based on his disability and changed financial circumstances, Husband sought to terminate the maintenance provision of the decree requiring him to pay Wife $1000 per month for five years. Husband's request to terminate a provision of the decree necessarily requires the court to modify the decree itself. But, as A.R.S. § 25-317(D) and (G) make clear, once the parties agree that a maintenance provision is not modifiable and the superior court has found that the maintenance provision is "not unfair," courts may not "modify the decree . . . regarding maintenance."[3]

¶11     Husband argues that the legislature has stripped the courts of jurisdiction only to *modify*, but not to *terminate*, maintenance provisions. Husband bases his argument on the language of A.R.S. § 25-317(G), which prevents courts from *modifying* maintenance awards, but is silent regarding *termination* of such agreements. The legislature knew the difference between "modification" and "termination," he contends, because A.R.S. § 25-327(A) uses both terms.

---

[3]     We do not address whether fraud or duress in the making of a non-modification agreement may render such a provision void.

Therefore, he asserts, the legislature must have intended that courts retain jurisdiction to terminate maintenance agreements, but not to modify them. We disagree with Husband's analysis.

¶12     Husband is correct that A.R.S. § 25-327(A) uses both the terms "modified" and "terminated," while A.R.S. § 25-317(G) uses only "modified." Husband contends that A.R.S. § 25-317(G) would have to include the term "terminate," in addition to "modify," to achieve the result Wife seeks. In other words, Husband argues that, for Wife to prevail, A.R.S. § 25-317(G) would have to read:  a non-modification agreement "prevents the court from exercising jurisdiction to modify *or terminate* the decree and separation agreement regarding maintenance."

¶13     A careful reading of the statutes, however, reveals precisely *what* can be modified or terminated under each section. Section 25-327(A) allows modification or termination of general maintenance and support *provisions* of a decree, while section 25-317(G) prevents the court from exercising jurisdiction to modify the *decree itself* regarding maintenance once a maintenance provision has been made non-modifiable. Terminating the maintenance provision has the same effect as modifying the decree itself regarding maintenance. Such a modification, however, is specifically prohibited by section 25-317(G) (divesting courts of "jurisdiction to modify the decree . . . regarding maintenance"). Thus, as written, A.R.S. § 25-317(G)

harmonizes with A.R.S. § 25-327(A), and each serves its separate purpose.

¶14        Husband's interpretation also leads to the counterintuitive notion that the legislature stripped courts of jurisdiction to make simple modifications, yet allowed courts to retain jurisdiction to provide the more drastic remedy of termination.  We do not believe the legislature intended such a result.  Enforcing the statutory provisions relating to non-modification of maintenance provisions helps ensure finality, certainty, and predictability in divorce settlements.  *See* Unif. Marriage & Divorce Act § 306 cmt. (1973); *see also* A.R.S. § 25-317(A); *Schroeder v. Schroeder*, 161 Ariz. 316, 321-23, 778 P.2d 1212, 1217-19 (1989).  Those policies would be thwarted if statutorily non-modifiable maintenance provisions could later be terminated because of changed circumstances.

¶15        The legislative history of the amendments to A.R.S. § 25-327(A) supports our conclusion.  The term "terminate" was added to A.R.S. § 25-327(A) in 2002 by Senate Bill 1028 ("S.B. 1028"), 2002 Ariz. Sess. Laws, ch. 310, § 2 (2d Reg. Sess.), six years after the legislature enacted A.R.S. § 25-317(G).  1996 Ariz. Sess. Laws, ch. 145, § 7 (2d Reg. Sess.).  Thus, for six years, between 1996 and 2002, both A.R.S. §§ 25-317(G) and 25-327(A) used only the term "modify."  The fact sheet for S.B. 1028 states that the 2002 amendment to section

§ 25-327(A) altered the section for statutory consistency and to conform the Arizona statute to federal statutes. S.B. 1028 Fact Sheet. This history shows that the legislature did not deem the addition of the word "termination" a substantive change; that is, A.R.S. § 25-327 was viewed as including the power to modify and terminate maintenance and support provisions both before and after the amendment. *See In re Marriage of Zale*, 193 Ariz. 246, 251, ¶ 21, 972 P.3d 230, 235 (1999) (recognizing that termination of a spousal maintenance award is permitted). The parties also do not dispute that during those six years "modification" was understood to include "termination." We therefore conclude that the 2002 clarifying amendment did not change that understanding.

¶16     Husband next suggests that this court should follow the court of appeals opinion in *Diefenbach v. Holmberg*, 200 Ariz. 415, 416-17, ¶¶ 4-5, 26 P.3d 1186, 1187-88 (App. 2001). In *Diefenbach*, the parties signed a spousal maintenance agreement requiring the husband to make payments that were "non-modifiable in amount or duration for any reason by either party." *Id.* at 416, ¶ 2, 26 P.3d at 1187. The wife died before the husband finished making payments. *Id.* ¶ 3. The court in *Diefenbach* had to decide whether Diefenbach's maintenance payments should terminate or continue.

¶17     *Diefenbach* does not guide our inquiry because it

- 10 -

addressed a unique provision in A.R.S. § 25-327(B), a provision not at issue in this case. That section provides that "the obligation to pay future maintenance is terminated on the death of either party" unless the decree "expressly provide[s]" that the obligation to pay future maintenance is to survive the death of either party. *Id.* The decree in *Diefenbach* provided that the maintenance obligation was "non-modifiable" as to "both amount or duration." 200 Ariz. at 416, ¶ 2, 26 P.3d at 1187. It did not, however, expressly provide that the obligation to pay maintenance would survive the death of either party. *See* A.R.S. § 25-327(B). The court therefore concluded that the obligation to pay "non-modifiable" maintenance did not survive the death of the wife.[4] We address a different provision in this case.

¶18     Having concluded that A.R.S. § 25-317(G) removes jurisdiction from our courts to modify or terminate a statutorily non-modifiable spousal maintenance provision in a decree of dissolution, we turn to our second inquiry, whether Rule 60(c)(5) allows the court to provide equitable relief.

---

[4]     We disapprove of dictum in *Diefenbach* stating that while courts lack jurisdiction under A.R.S. § 25-317(G) to modify decrees regarding non-modifiable maintenance terms, they retain jurisdiction to terminate such provisions. *Diefenbach*, 200 Ariz. at 418, ¶ 10, 26 P.3d at 1189.

**B. Rule 60(c)(5)**

¶19     Husband argues that he is entitled to equitable relief under Rule 60(c)(5).  That rule provides relief from a "final judgment, order or proceeding [if] it is no longer equitable that the judgment should have prospective application."  *Id.* Husband claims that despite any statute purporting to divest jurisdiction to modify or terminate the maintenance provision, the court nonetheless retains equitable power to grant relief by terminating the maintenance provision at issue.

¶20     The Arizona legislature is charged with the responsibility for enacting substantive law that "creates, defines and regulates rights."  *State v. Birmingham*, 96 Ariz. 109, 110, 392 P.2d 775, 776 (1964).  The Arizona Constitution, however, grants this court the "[p]ower to make rules relative to all procedural matters in any court."  Ariz. Const. art. 6, § 5(5).  Rules promulgated by the court may address only procedural matters.  *E.g.*, *State v. Superior Court (Ahrens)*, 154 Ariz. 574, 576, 744 P.2d 675, 677 (1987).  Court rules may not "abridge, enlarge or modify substantive rights of a litigant." A.R.S. § 12-109(A) (2003).

¶21     For statutory dissolution actions, the legislature "defines the boundaries of a dissolution court's jurisdiction, and the court may not exceed its jurisdiction even when exercising its equitable powers."  *Weaver*, 131 Ariz. at 587, 643

- 12 -

P.2d at 500.   Thus, the court's rules must yield to statutory provisions on substantive matters such as the court's subject matter jurisdiction.

¶22      Like other court rules, Rule 60(c) affects procedural matters.   *E.g., Ahrens*, 154 Ariz. at 576, 744 P.2d at 677 (citing *State v. Birmingham*, 95 Ariz. 310, 316, 390 P.2d 103, 107 (1964)); *see also In re Marriage of Worcester*, 192 Ariz. 24, 27, ¶ 9, 960 P.2d 624, 627 (1998) ("Where the legislature has spoken by statute, we will not construe [Rule 60(c)] so as to interfere with the proper application of those statutes."). The legislature's substantive divestiture of jurisdiction in this area supersedes the court's procedural rule.   We therefore hold that, once the statutory conditions making a maintenance provision non-modifiable have been met, A.R.S. § 25-317(G) removes jurisdiction from the courts to modify decrees regarding spousal maintenance.   Allowing Husband relief under Rule 60(c)(5) would permit the court's procedural rule to govern the substantive statute that limits the court's jurisdiction in such matters.   In such a situation, the rule must yield to the substantive law.

¶23      Citing *Fye v. Zigoures*, 114 Ariz. 579, 562 P.2d 1077 (App. 1977), Husband claims that Arizona courts have allowed equitable relief from non-modification agreements in the past and should continue to do so.   Although the court in *Fye* did

permit relief under Rule 60(c)(5) from a non-modifiable provision, it does not control the disposition of this case. 114 Ariz. at 581-82, 562 P.2d at 1079-80. Like *Diefenbach*, *Fye* addressed the application of Rule 60(c)(5) in the context of death, a situation not controlled by A.R.S. §§ 25-317 or 25-319, but rather by a separate statutory provision in A.R.S. § 25-327(B). More significantly, *Fye* was decided nineteen years before the amendment of A.R.S. § 25-317 that deprives the courts of jurisdiction to modify spousal maintenance provisions. *Fye* does not control; instead, A.R.S. § 25-317(G) governs our inquiry.

¶24 Husband alternatively argues that the legislature overstepped its authority by enacting A.R.S. § 25-317(G) because the restriction on the courts' jurisdiction unconstitutionally interferes with the courts' inherent equitable powers.[5] We disagree. Dissolution actions are creatures of statute and involve substantive rights. *E.g.*, *Worcester*, 192 Ariz. at 27, ¶ 9, 960 P.2d at 627; *Weaver*, 131 Ariz. at 587, 643 P.2d at 500. In this context, the legislature has the power to circumscribe the courts' jurisdiction.

¶25 We hold that courts may not grant relief under Rule

---

[5] Husband admits that this issue was raised for the first time on appeal, but urges the court to exercise its discretion to consider the constitutional issue.

60(c)(5) from spousal maintenance agreements made non-modifiable pursuant to A.R.S. §§ 25-319(C) and 25-317(G).

### III. ATTORNEYS' FEES

**¶26** We deny Husband's request for attorneys' fees under A.R.S. § 25-324 (2007) and Rule 21(c) of the Arizona Rules of Civil Appellate Procedure.

### IV. CONCLUSION

**¶27** For the foregoing reasons, we hold that spousal maintenance agreements made non-modifiable pursuant to A.R.S. §§ 25-319(C) and 25–317(G) are not subject to modification or termination, nor is relief from such provisions available under Rule 60(c)(5). Accordingly, we vacate paragraphs seventeen to twenty-seven of the opinion of the court of appeals and affirm the judgment of the trial court.

_____
Rebecca White Berch, Vice Chief Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Michael D. Ryan, Justice

_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice