[No. 12762-1-III. Division Three. January 18, 1994.]

*In the Matter of the Marriage of* WANDA KAY ROTH, *Respondent, and* ALBERT COKE ROTH III, *Appellant.*

*Brian J. Iller* and *Raekes, Rettig, Osborne, Forgette & O'Donnell,* for appellant.

*Mark P. Kuffel* and *Shea Kuffel,* for respondent.

SWEENEY, J. — Albert Coke Roth III moved to terminate his spousal support obligation based on his ex-wife's remarriage and to modify his child support based on a substantial change in his employment situation. The trial court denied the motion on both counts.

Mr. Roth appeals, contending the spousal maintenance terminated as a matter of law upon his ex-wife's remarriage and modification of child support does not require the showing of a substantial change in circumstances. We agree and reverse.

## I

Mr. Roth and Wanda Kay Roth (now Ms. Hansen) were divorced on June 30, 1989. The decree terminating their marriage obligated Mr. Roth to pay monthly spousal maintenance until June 15, 1993, and support for the couple's two children. About 16 months after the decree was entered, Mr. Roth petitioned to modify the child support, claiming "[s]ubstantial changes . . . in [his] employment situation." On September 21, 1991, Ms. Hansen remarried. At the hearing on the motion, apparently Mr. Roth also requested that his spousal support terminate upon his ex-wife's remarriage.

On August 3, 1992, the court denied the petition to modify, noting it was clear from the language that the parties intended spousal maintenance to continue until mid-June 1993. This, the court ruled, expressly precluded modification or termination of the spousal support before that date.[1] It also found that no substantial changes had occurred warranting modification of Mr. Roth's child support obligation. Mr. Roth's motion for reconsideration was denied on August 28, and a final order entered on September 3.

## II

Mr. Roth contends his obligation to pay spousal maintenance terminated by operation of law when Ms. Hansen remarried. He argues that the provision for spousal main-

---

[1]The spousal support provision in the divorce decree stated: "[T]he Respondent shall be required to pay to the Petitioner, as spousal maintenance, the sum of $424.00 per month commencing on the 15th day of July, 1989 and continuing on the 15th day of each month thereafter until June 15, 1993. Only in the event of the death of either the Respondent or Petitioner prior to June 15, 1993 shall this obligation to pay spousal maintenance terminate. The parties have agreed that the maintenance obligation set forth herein shall not be subject to modification, and this provision shall be construed as a separation contract as provided for in R.C.W. 26.09.070."

tenance in this decree is not sufficiently specific to overcome the statutory and common law presumption of termination upon the remarriage of the receiving spouse.

Parties to a dissolution action "may expressly preclude or limit modification of any provision for maintenance . . ." in a separation contract. RCW 26.09.070(7).[2] But the obligation to pay future maintenance terminates upon the remarriage of the party receiving maintenance "[u]nless otherwise agreed in writing or expressly provided in the decree . . .". RCW 26.09.170(2).

The effect of remarriage upon a spousal maintenance obligation has been the subject of varying and sometimes inconsistent appellate opinions. *See In re Marriage of Williams*, 56 Wn. App. 138, 782 P.2d 1087 (1989) (maintenance for 4 years or until wife obtains bachelor's degree held not terminated upon wife's remarriage), *rev'd*, 115 Wn.2d 202, 796 P.2d 421 (1990); *In re Marriage of Tower*, 55 Wn. App. 697, 704 n.4, 780 P.2d 863 (1989) (dicta: RCW 26.09.170(2) establishes presumption maintenance terminates upon remarriage, but does not *require* that result. Statute reflects traditional, outmoded assumption women supported by husbands), *review denied*, 114 Wn.2d 1002 (1990); *In re Marriage of Rufener*, 52 Wn. App. 788, 764 P.2d 655 (1988) (maintenance provision for 50 consecutive months which does not allow modification held terminated upon wife's remarriage), *review denied*, 112 Wn.2d 1008 (1989); *In re Marriage of Thach*, 29 Wn. App. 672, 630 P.2d 487 (1981) (maintenance for 30 months to assist wife in obtaining college degree held terminated upon remarriage of wife).

Ms. Hansen argues that language indicating an intent to impose a permanent or unmodifiable maintenance obligation is sufficient to overcome the presumption of termination upon remarriage. A similar contention was recently addressed by our Supreme Court in *Williams*. There, the court reconciled

---

[2]RCW 26.09.070(7) reads in part as follows:

"When the separation contract so provides, the decree may expressly preclude or limit modification of any provision for maintenance set forth in the decree."

language in the 1973 dissolution act, which included remarriage as an event terminating spousal support, with prior cases requiring specific decretal language to continue alimony past death. It concluded RCW 26.09.170(2) required the specific mention of remarriage to continue spousal support beyond remarriage. *Williams*, 115 Wn.2d at 205-10.

> Absent an indication that the Legislature intended to overrule the common law, new legislation will be presumed to be consistent with prior judicial decisions. The Legislature did not indicate it intended to overrule our prior case law requiring decretal specificity.

(Citations omitted.) *Williams*, 115 Wn.2d at 208.

The maintenance obligation in *Williams* provided that it would not be modifiable by a court. The Supreme Court held that the language was not sufficiently specific to overcome the statutory presumption of RCW 26.09.170(2), and added:

> In the hopes of discouraging dubious interpretation of questionable decretal language, we hold further that the decree must *specifically mention remarriage* in order to overcome the presumption. Specific decretal language means just that.

(Italics ours.) *Williams*, 115 Wn.2d at 210. Ms. Hansen argues that these statements are dicta. And although the language in the Roth decree fails to mention remarriage, she contends it is nonetheless sufficient to overcome any "dubious interpretation". We disagree.

 Dicta is language not necessary to the decision in a particular case. *Pedersen v. Klinkert*, 56 Wn.2d 313, 317, 320, 352 P.2d 1025 (1960). The *Williams* court outlined the policy reasons for both the statutory presumption of spousal support terminating on death or remarriage and the public policy requiring specificity to overcome this presumption. *Williams*, 115 Wn.2d at 205-10. At issue was the sufficiency of the language in the Williamses' decree. The requirement of specific decretal language was an integral and necessary part of the court's holding in *Williams*.

Ms. Hansen argues that the word "only" clearly and unambiguously excludes any event other than death from termi-

nating spousal support before June 15, 1993. While this might well be true if this were a contract or court decree imposing obligations other than spousal support, *Williams* makes clear that in the case of spousal support this categorical exclusionary language is not sufficient. As the court in *Bird v. Henke*, 65 Wn.2d 79, 395 P.2d 751 (1964) noted:

> [T]his rule [is] a salutory one, if for no other reason than that it encourages the considered judgment inherent in clarity and certainty. It tends to exclude misunderstanding and ambiguity in an area of human relations where the emotions of the moment often conflict with afterthoughts, changing circumstances, death, and the intervention of third party interests. . . . Watering [the rule] down by sophisticated construction of questionable decretal language, however magnanimous the spirit, would lead but to confusion.

*Bird*, at 82. Both the statute and case law are intended to require the discussion and consideration of continued spousal support in the event of remarriage.

Ms. Hansen also argues that RCW 26.09.170(2) must be read in the disjunctive such that either an express provision in the decree or satisfaction of the "otherwise agreed in writing" requirement is sufficient. She asserts the writing here satisfied the latter requirement. But this very argument was addressed and rejected in *Williams*: "Applying that principle to this case directly contradicts the principle that a decree incorporating a settlement governs the rights of the parties, not the settlement agreement." *Williams*, 115 Wn.2d at 207.

In sum, RCW 26.09.170(2) and *Williams* mean just what they say: "express provision" means use of the word "remarriage". Here, neither the dissolution agreement nor any other agreement provides that maintenance is to continue past remarriage; remarriage therefore terminated the obligation.

### III

Alternatively, Ms. Hansen contends the spousal maintenance provision constitutes a property settlement agreement rather than a maintenance/alimony obligation. Maintenance agreements are generally modifiable, while provi-

sions for property division are not. Whether future payments are for maintenance or for property settlement depends on the intent and circumstances of the parties. *Thompson v. Thompson*, 82 Wn.2d 352, 356, 510 P.2d 827 (1973). The distinction is set out in *In re Marriage of Coyle*, 61 Wn. App. 653, 811 P.2d 244, *review denied*, 117 Wn.2d 1017 (1991):

> Maintenance depends on the needs of one spouse and the ability of the other spouse to pay; generally terminates on the death of either spouse, or the remarriage of the receiving spouse; and is an obligation which is paid out of the earnings or estate of the party responsible for the obligation. Changed financial circumstances of either party will justify a modification.
>
> A property division, on the other hand, simply disposes of the property of the parties, both community and separate, presumably upon an equitable basis. The award of property usually constitutes a specific item or sum and is not affected by the death or remarriage of a party. A property division cannot always be conveniently effected by a present allocation of property to each party; a specific item of property may be awarded to one spouse with a duty of the other to make future compensating payments.

(Citations omitted.) *Coyle*, at 660-61.

Ms. Hansen relies on *Thompson*, but *Thompson* is distinguishable on its facts. The court there concluded that the husband's obligation to pay $500 per month plus the net income from his business property for life was not alimony. In doing so, it relied on stipulated facts that the parties intended to avoid tax problems by designating the payments as "alimony". Further, the payments were tied to a real estate holding. *Thompson*, at 354, 358.

In *Carstens v. Carstens*, 10 Wn. App. 964, 521 P.2d 241 (1974), the court applied the *Thompson* guidelines to an "alimony" provision for monthly payments terminated by the death or remarriage of the wife. In holding that this provision clearly constituted alimony, the court relied on the following factors: (1) the provision was not ambiguous on its face; (2) the payments terminated upon death or remarriage like alimony or support; (3) the payments did not represent a specific sum; and (4) the alimony provision was separate

from the property settlement provisions. *Carstens*, at 966-67.

The Roth maintenance provision refers to the monthly payments as "spousal maintenance" and is not facially ambiguous. Although this provision does not mention the effect of remarriage, it does provide for termination upon the death of either party. The payments terminate upon the death of either Mr. Roth or Ms. Hansen, and therefore are not a specific sum or property debt which would be owed to or due from the deceased's estate. Finally, the "Spousal Maintenance" provision is separate and distinct from the "Community Property" provision. The provision was properly treated as an obligation for spousal maintenance.

## IV

Mr. Roth contends the trial court erred in requiring the showing of a substantial change in circumstances in order to modify his child support obligation. In its memorandum decision, the court stated it was "not persuaded that there has been a substantial change of circumstances from the date of the decree to the date of filing the petition to modify it."

Modifications of child support are governed by RCW 26.09-.170 which provides in relevant part:

> (8)(a) All child support decrees may be adjusted once *every twenty-four months* based upon changes in the income of the parents *without a showing of substantially changed circumstances*. Either party may initiate the adjustment by filing a motion and child support worksheets.

(Italics ours.) RCW 26.09.170 became effective June 11, 1992, during the pendency of the Roth petition. Laws of 1992, ch. 229, § 2. Former RCW 26.09.170(8)(b), amended by the 1992 act, provided:

> Parents whose decrees are entered before July 1, 1990, may petition the court for a modification after *twelve months* has [*sic*] expired from the entry of the decree or the most recent modification setting child support, whichever is later. However, if a party is granted relief under this provision, twenty-four

months must pass before another petition for modification may be filed pursuant to (a) of this subsection.

(Italics ours.)

■■ Ms. Hansen contends Mr. Roth's petition was not properly before the court because repeal of the subsection which allowed modification after only 12 months terminated all proceedings based on that subsection. *Seattle Rendering Works, Inc. v. Darling-Delaware Co.*, 104 Wn.2d 15, 19, 701 P.2d 502 (1985). However, repeal of a statute "does not destroy vested rights . . .". *Seattle Rendering*, at 19; *Lau v. Nelson*, 89 Wn.2d 772, 774, 575 P.2d 719 (1978), *overruled on other grounds in Roberts v. Johnson*, 91 Wn.2d 182, 588 P.2d 201 (1978). The amendment of subsection (8)(b) did not affect Mr. Roth's vested right to petition for modification of child support based upon changes in his income. RCW 26.09.170-(8)(a).

■■ The next question is whether this statute requires a petitioner to file after 24 months, or whether it simply requires 24 months to pass before modification is granted. While amended subsection (8)(b) referred to a parent's right to *petition* the court for modification after 12 months, subsection (8)(a) simply states that "[a]ll child support decrees *may be adjusted* once every twenty-four months . . .". (Italics ours.) Statutory language is given its ordinary and usual meaning. *State v. Raymer*, 61 Wn. App. 516, 519, 810 P.2d 1383, *review denied*, 117 Wn.2d 1022 (1991); *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979). The court's "adjustment" of the child support would have taken effect over 24 months after the Roths' dissolution decree if Mr. Roth's petition for modification had been granted and therefore would have satisfied the requirements of RCW 26.09.170(8)(a).

The judgment of the trial court is reversed and the case is remanded for further proceedings in accordance with this opinion.

THOMPSON, C.J., and MUNSON, J., concur.