170 P.3d 676

**In re the Marriage of Kathy I. PALMER, Petitioner/Appellee,**

v.

**Sydney N. PALMER, Respondent/Appellant.**

**No. 1 CA–CV 06–0674.**

Court of Appeals of Arizona, Division 1, Department E.

Nov. 6, 2007.

---

68

Doyle–Best, P.C. by John C. Doyle, Scottsdale, Attorneys for Petitioner/Appellee.

Pearlstein Law Offices, P.L.L.C. by Suzan V. Pearlstein, Phoenix, Attorneys for Respondent–Appellant.

## OPINION

GEMMILL, Chief Judge.

¶ 1 After the dissolution of a marriage, a person's obligation to pay future maintenance to a former spouse terminates upon the death of either party or upon the remarriage of the party receiving maintenance, unless the decree of dissolution expressly provides to the contrary or the parties have otherwise agreed in writing. Ariz.Rev.Stat. ("A.R.S.") § 25–327(B) (2007). In this appeal we decide whether a decree of dissolution "expressly" provides that the former husband's spousal maintenance obligation will continue beyond the remarriage of the former wife.

¶ 2 Sydney M. Palmer ("Husband") appeals the family court's ruling that his spousal maintenance obligations must continue notwithstanding the remarriage of Kathy I. Palmer ("Wife"). Husband also argues that the court erred by awarding attorneys' fees to Wife without an evidentiary hearing. For the following reasons, we reverse and remand for entry of an order terminating Husband's spousal maintenance obligation and for further proceedings regarding attorneys' fees.

## FACTS AND PROCEDURAL BACKGROUND

¶ 3 Husband's marriage to Wife was dissolved on November 9, 2004. According to the decree of dissolution ("Decree"), Husband is obligated to provide spousal maintenance to Wife in the sum of $3,100.00 per month until October 31, 2008. The relevant portion of the Decree provides that:

> Commencing this date, and payable on the first (1st) day of each month hereafter, [Husband] shall pay [Wife] as and for spousal maintenance, the sum of Three Thousand One Hundred Dollars ($3,100.00) per month until October 31, 2008. Said term and amount of spousal maintenance is non-modifiable until October 31, 2008, except such shall end upon the death of [Wife].

¶ 4 Wife remarried in March 2005. In September 2005, Husband filed a petition to terminate spousal maintenance based upon Arizona Revised Statute ("A.R.S.") section 25–327(B): "Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated on the death of either party or the remarriage of the party receiving maintenance." In May 2006, while Husband's motion was still pending, the parties submitted a joint pretrial statement that set forth pertinent undisputed facts. On June 7, 2006, the parties appeared before the family court for an evidentiary hearing. The court concluded that there were no factual issues to be determined and that the issue of Husband's continuing obligation for spousal maintenance could be decided as a matter of law. The court heard argument from each party as though cross-motions for summary judgment were pending.

¶ 5 The family court determined that Husband must continue providing spousal maintenance to Wife until October 31, 2008, as required by the Decree, notwithstanding A.R.S. § 25–327(B). The court also awarded attorneys' fees to Wife. After entry of formal judgment, Husband filed motions for new trial that were denied.

¶ 6 We have jurisdiction to consider Husband's appeal pursuant to A.R.S. § 12–2101(B) (2003).

## ANALYSIS

¶ 7 We apply a *de novo* standard when reviewing a trial court's grant of summary judgment. *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 85, ¶ 20, 118 P.3d 29, 33 (App.2005). We also apply a *de novo* standard regarding the interpretation of statutes and decrees of dissolution. *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 500, ¶ 24, 88 P.3d 565, 570 (App.2004) (applying *de novo* standard when reviewing issues of statutory interpretation); *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 11, 157 P.3d 482, 486 (App.2007) (applying same standard regarding interpretation

of dissolution decree); *Danielson v. Evans,* 201 Ariz. 401, 406, ¶ 13, 36 P.3d 749, 754 (App.2001) (same). The material facts in this case are undisputed. What remains to be determined is the legal question whether the Decree expressly provides, as required by A.R.S. § 25–327(B), that Husband's obligation to make monthly spousal support payments will continue after Wife's remarriage.

¶ 8 Husband argues that under § 25–327(B) his spousal maintenance obligation ended when Wife remarried because the Decree does not contain the express language required to impose a continuing obligation. That is, the Decree does not expressly state that his obligation to continue paying spousal maintenance survives Wife's remarriage. Wife argues that the Decree should be viewed as a contract and, as such, this court should read the "contract" in light of the parties' intentions. Additionally, Wife argues that because the Decree provides that spousal maintenance is non-modifiable and terminable only upon her death, it does in fact expressly provide that spousal maintenance must continue after Wife's remarriage.

¶ 9 The family court determined that § 25–327(B) did not mandate termination of Husband's payments "because the termination of spousal maintenance was expressly provided in the Decree: '[Said] term and amount of spousal maintenance is non-modifiable until October 31, 2008 except *such shall end upon the death of [Wife].*' " Thus, the court concluded that the express inclusion in the Decree that Husband's spousal maintenance obligations would terminate upon the death of Wife was tantamount to expressly providing that the remarriage of Wife would not terminate Husband's spousal maintenance obligations. Based on the language of the statute and guidance from our supreme court, we disagree.

¶ 10 The Arizona Supreme Court has considered the meaning of the word "expressly" in § 25–327(B) and has explained that "[t]he word 'expressly' is customarily defined as: 'directly and distinctly stated; expressed, not merely implied or left to inference.' " *In re Estelle's Estate,* 122 Ariz. 109, 113, 593 P.2d 663, 667 (1979) (quoting *State ex rel. Ashauer v. Hostetter,* 344 Mo. 665, 670, 127 S.W.2d 697, 699 (Mo.1939)). Similarly, the New Oxford American Dictionary defines "express" as "definitely stated, not merely implied" and "precisely and specifically identified to the exclusion of anything else." New Oxford American Dictionary 595 (2d ed.2005). The word "express" is derived from the Latin word *expressus* which literally means "distinctly presented." *Id.* Under the plain language of § 25–327(B), therefore, an obligation to continue paying spousal maintenance will be terminated upon the remarriage of the spouse receiving the payments unless the decree distinctly expresses, without the need of implication or inference, that the spousal maintenance will continue notwithstanding remarriage. *See also Johnson v. Hispanic Broadcasters of Tucson, Inc.,* 196 Ariz. 597, 601, ¶ 9, 2 P.3d 687, 691 (App.2000) (similarly construing the word "expressly" in a different statute).

¶ 11 The Decree states that the "term and amount of spousal maintenance is non-modifiable until October 31, 2008 except such shall end upon the death" of Wife. To conclude that such language means that spousal maintenance will continue after Wife's remarriage requires at least one level of inference. One must reason from "non-modifiable" and "except such shall end upon the death of Wife" to the conclusion that spousal maintenance was intended to continue notwithstanding Wife's remarriage.

¶ 12 The inference or reasoning that is required to arrive at this conclusion is precisely that which Wife urges and the family court adopted. Namely, because the Decree specifically mentions the death of Wife as a reason for terminating the spousal maintenance obligation but omits any mention of Wife's remarriage, this is equivalent to an express provision in the Decree that spousal maintenance shall continue despite Wife's remarriage. Such an inference may be entirely reasonable, especially if we were engaging in routine interpretation of the *intent* of the Decree. But A.R.S. § 25–327(B) mandates a different standard—an express provision regarding the effect of remarriage—which this Decree does not contain.

¶ 13 "Because even the intentional omission of termination language ... is not equivalent to an affirmative, unambiguous statement that the parties intended the spousal maintenance obligations to continue, we hold that, when former spouses seek to avoid the application of § 25–327(B), *they must make their intention unmistakably clear." Diefenbach v. Holmberg,* 200 Ariz. 415, 418, ¶ 8, 26 P.3d 1186, 1189 (App.2001) (emphasis added). Because the Decree does not expressly state that spousal maintenance shall not be terminated upon the remarriage of Wife, we conclude that Husband's obligation to pay spousal maintenance terminated upon Wife's remarriage by operation of law under § 25–327(B). *See In re Estelle's Estate,* 122 Ariz. at 113, 593 P.2d at 667; *Diefenbach,* 200 Ariz. at 417–18, ¶¶ 5–8, 26 P.3d at 1188–89.

¶ 14 Several courts from other jurisdictions have reached similar conclusions under similar statutes and decrees. *See, e.g., Messer v. Messer,* 134 S.W.3d 570, 573 (Ky.2004) ("We conclude that absent a specific statement in the written agreement or in the decree that maintenance will not terminate upon the death of either party or the obligee's remarriage, the occurrence of one of those statutory contingencies terminates the maintenance obligation by operation of law."); *Moore v. Jacobsen,* 373 Md. 185, 817 A.2d 212, 218 (2003) ("An agreement must mention marriage expressly; other agreements, such as those in this case addressing nonmodification, will not suffice. The parties here did not agree so as to avoid the operation of § 11–108; therefore, alimony terminated upon respondent's remarriage."); *Gunderson v. Gunderson,* 408 N.W.2d 852, 853 (Minn. 1987) ("[E]vidence of how parties view a maintenance obligation, whether taken from negotiations or a stipulation, is irrelevant to the issue of whether maintenance should continue past remarriage given section 518.64, subdivision 3's requirement that any such provision be positively expressed in the decree."); *Reeves v. Reeves,* 890 S.W.2d 369, 372 (Mo.App.1994) ("Where the decree and separation agreement are silent with respect to the effect of remarriage on the maintenance obligation, no further inquiry into the intent of the parties concerning maintenance

is permitted; the statute controls and the obligation is terminated."); *MacNelly v. MacNelly,* 17 Va.App. 427, 437 S.E.2d 582, 584 (1993) ("[A]ny attempt to abrogate the effect of the statute requires express language either citing the statute or expressly stating that remarriage does not terminate the obligation."); *In re Marriage of Roth,* 72 Wash.App. 566, 865 P.2d 43, 46 (1994) (" '[E]xpress provision' means use of the word 'remarriage'. Here, neither the dissolution agreement nor any other agreement provides that maintenance is to continue past remarriage; remarriage therefore terminated the obligation."). *But see In re Marriage of Hahn,* 628 P.2d 175, 176 (Colo.Ct.App. 1981) ("In our view, the quoted language of the separation agreement is such an express provision. Although it does not explicitly provide for continuation or termination of maintenance in the event of remarriage, nevertheless, it indicates that it was the contemplation of the parties that only the wife's death would absolve the husband of liability for payment of maintenance.").

¶ 15 By enacting A.R.S. § 25–327(B), the Arizona legislature established that spousal maintenance will be terminated upon the remarriage of the receiving spouse unless the decree expressly provides otherwise or the parties have agreed in writing to the contrary. A decree lacking express language is not sufficient to prevent termination, nor is an oral agreement between the parties. It is apparent to us that the legislature intended to minimize ambiguity, uncertainty, and accompanying litigation by requiring either express language in the decree or a written agreement between the parties. Our determination that this Decree lacks the requisite language is consistent with this purpose. *See Moore,* 817 A.2d at 215 ("The public policy set forth in § 11–108 clearly states that alimony does not survive the remarriage of the recipient. To create an exception to that policy, an agreement must be equally clear. We think a bright-line rule requiring an express provision providing that support shall not terminate upon remarriage fosters certainty, resolves ambiguity and reduces litigation."); *In re Marriage of Roth,* 865 P.2d at 46 ("In the hopes of discouraging dubious

interpretation of questionable decretal language, we hold further that the decree must specifically mention remarriage in order to overcome the presumption"); *see also Towne Dev. of Chandler, Inc. v.Super. Ct.,* 173 Ariz. 364, 368, 842 P.2d 1377, 1381 (App.1992) (explaining that Arizona Rule of Civil Procedure 80(d) "serves to relieve the courts from choosing between conflicting recollections of advocates whose interests diverge"); *Canyon Contracting Co. v. Tohono O'Odham Hous. Auth.,* 172 Ariz. 389, 393, 837 P.2d 750, 754 (App.1992) (similarly noting that Rule 80(d) advances the policy of "reliev[ing] the trial court from having to resolve factual disputes as to the existence and terms of an alleged settlement agreement.").

¶ 16 The family court decided that *Diefenbach* was not applicable in this case, stating that the decree in *Diefenbach* contained only modification language and not termination language, whereas the Decree here contains both modification and termination provisions. This distinction, however, does not undermine the statutory foundation of *Diefenbach*: § 25–327(B) requires that, for a spousal maintenance obligation to continue after remarriage, the decree must contain an "express" provision to that effect. Although the decree at issue in *Diefenbach* differs from the Decree in this appeal, *Diefenbach* is consistent with and supportive of our decision here.

¶ 17 The Decree states that Husband's obligation to provide spousal maintenance is non-modifiable, but such language does not satisfy the statutory standard of § 25–327(B). The terms "modify" and "terminate" embody two distinct concepts. The word "modify" means to "make partial or minor changes to (something), typically so as to improve it or to make it less extreme." NEW OXFORD AMERICAN DICTIONARY 1090 (2d ed.2005). In contrast, the word "terminate" means to "bring to an end." *Id.* at 1741. Hence, by their very meanings, "modify" and "terminate" represent two discrete notions. *See Urias,* 211 Ariz. at 85, ¶ 22, 118 P.3d at 33 (explaining that we will consider respected dictionary definitions if the legislature has not defined a word or phrase in a statute).

¶ 18 Therefore, even though the Decree states that Husband's spousal maintenance obligation is non-modifiable, such language does not specifically address termination and does not satisfy the statutory requirement of an express statement. *See Diefenbach,* 200 Ariz. at 417, ¶ 5, 26 P.3d at 1188 (stating that language specifying that spousal maintenance is "non-modifiable" does not satisfy the strict requirement of § 25–327(B) because "non-modifiable" does not mean, in this context, "non-terminable"); *see also In re Marriage of Rufener,* 52 Wash.App. 788, 764 P.2d 655, 656 ("Upon remarriage, the maintenance obligation terminates automatically by operation of law. Termination thus is not a form of modification, but is the statutory result of remarriage.").

■ ¶ 19 This conclusion is further supported by examination of the language and scope of subsection A of § 25–327 compared to subsection B. By addressing both "modification" and "termination" in subsection A but only "termination" in subsection B, the legislature has signaled that these two terms have separate meanings in this context. *See In re Stephanie N.,* 210 Ariz. 317, 320, ¶ 17, 110 P.3d 1280, 1283 (App.2005) ("We must consider all pertinent statutory provisions in reaching a decision, and related statutes must be interpreted consistently and harmoniously with one another.") (citation omitted). Accordingly, to come within the exception to the general rule of termination under § 25–327(B), a decree must contain express language relating to *termination,* to the effect that the spousal maintenance obligation will not cease upon death or upon remarriage. Use of "non-modification" or similar *modification* language will not suffice. *See Diefenbach,* 200 Ariz. at 417, ¶ 5, 26 P.3d at 1188.

¶ 20 Wife also raises the argument that the Decree should be viewed as a contract and this court should apply contract principles to interpret the Decree. Our supreme court rejected a similar argument in *In re Marriage of Zale,* 193 Ariz. 246, 972 P.2d 230 (1999). In that case, a decree of dissolution was entered containing language that departed from the language that had been drafted by plaintiff's counsel, a draft to which defendant offered no objection. *Id.* at 248, ¶ 4, 972

P.2d at 232. Plaintiff argued that the trial court should consider extrinsic evidence to interpret the decree. *Id.* at ¶¶ 6, 7, 972 P.2d at 232. The supreme court held that "the parol evidence rule, a rule of substantive contract law, does not apply to a judgment." *Id.* at ¶ 15, 972 P.2d at 234. The court explained that "it is error to conclude that the parol evidence rule applies to judgments. A judgment is not an agreement between . . . the parties. Rather, it is an 'act of a court which fixes clearly the rights and liabilities of the respective parties to litigation and determines the controversy at hand.' " *Id.* at ¶ 10, 972 P.2d at 233 (quoting *Wolf Corp. v. Louis,* 11 Ariz.App. 352, 355, 464 P.2d 672, 675 (1970)).

¶ 21 The Decree before us is a final judgment. The family court correctly ruled that it was precluded from considering extrinsic evidence for the purpose of interpreting the Decree. We similarly reject Wife's contention that the court should consider the intent of the parties and interpret the Decree as though it is a contract.[1]

¶ 22 Husband further argues that the family court erred by awarding Wife attorneys' fees without permitting Husband an evidentiary hearing for the purposes of determining whether Wife was entitled under A.R.S. section 25–324 (2007) to receive attorneys' fees and whether Wife's requested fees were reasonable. In light of our reversal on the issue of continued spousal maintenance, we also reverse the court's award of attorneys' fees to Wife. Our substantive ruling in favor of Husband may affect the factors that were considered by the family court under § 25–324. Because the question of attorneys' fees must be considered anew, we need not reach Husband's procedural arguments at this time.

## CONCLUSIONS

¶ 23 We reverse the family court's determination that Husband's spousal mainte-

nance obligation is not terminated by operation of law under A.R.S. § 25–327(B). The Decree does not explicitly address remarriage and does not "expressly" provide that Husband shall have a continued obligation to make spousal maintenance payments notwithstanding Wife's remarriage.

■ ¶ 24 "When cross-motions for summary judgment have been filed, this court may evaluate the cross-motions and, if appropriate, remand with instructions that judgment be entered in favor of the appellants." *Burke v. Voicestream Wireless Corp. II,* 207 Ariz. 393, 400, ¶ 37, 87 P.3d 81, 88 (App.2004). Accordingly, we remand for entry of an order terminating Husband's spousal maintenance obligations and for a determination of the amount of remittance owed to Husband for those payments made after Wife's remarriage.

¶ 25 We also reverse the award of attorneys' fees to Wife and remand for further consideration of attorneys' fees in accordance with A.R.S. § 25–324.

■ ¶ 26 Regarding attorneys' fees on appeal, Husband did not request an award. Wife has requested an award of attorneys' fees on appeal, citing § 25–324 and Arizona Rule of Civil Appellate Procedure (ARCAP) 25. We lack evidence of the parties' current financial resources, and in our discretion we decline to award Wife any fees under § 25–324. ARCAP 25 authorizes us to award fees against a party who brings a frivolous appeal. Wife requests an award of attorneys' fees "for having to defend Husband's frivolous appeal." As our resolution of this appeal demonstrates, the issue presented by Husband is not the least bit frivolous. No fees will be awarded to Wife under Rule 25.

¶ 27 Upon compliance with ARCAP 21, Husband will be awarded his taxable costs on appeal.

---

1. Wife also argues that "to assume that the language or lack thereof as set forth in the Decree provides that spousal maintenance terminates *both* upon Wife's remarriage *and* her death would render meaningless the provision that spousal maintenance shall end upon Wife's death." We first note that Wife makes this argument in the context of her contention that the court should view the Decree as a contract, an approach we must reject. Furthermore, even if our holding today does render meaningless the provision in the Decree that spousal maintenance ends upon Wife's death, an ordinary canon of construction cannot trump the plain language of the statute requiring an express provision in the Decree.

CONCURRING: PATRICK IRVINE, Presiding Judge and SHELDON H. WEISBERG, Judge.

