In the ESTATE OF Robert B. MACKIE; Jerry Mackie, Appellant,

v.

Jeanette MACKIE, Respondent.

No. WD 69043.

Missouri Court of Appeals, Western District.

Sept. 9, 2008.

Michael Joseph Schmid, Jefferson City, MO., for Jerry Mackie.

Ryan C. Bridges, Osage Beach, MO., for Respondent.

Before JOSEPH M. ELLIS, P.J., RONALD R. HOLLIGER and JOSEPH P. DANDURAND, JJ.

JOSEPH P. DANDURAND, Judge.

This is an appeal by the estate of Robert B. Mackie, through Jerry Mackie, personal representative, from an adverse judgment entered in the Circuit Court of Morgan County, probate division allowing the claim of the decedent's former wife, Jeanette Mackie. In its sole point on appeal, the estate claims the trial court erred in allowing Ms. Mackie's claim for maintenance against the estate, because the statutory presumption of termination of maintenance upon death of a party, pursuant to section 452.370.3, RSMo,[1] is not rebutted. The point is granted, the trial court's judgment is reversed, and the matter is remanded.

## Facts

On April 12, 1994, the Circuit Court of Morgan County dissolved the marriage of Robert and Jeanette Mackie. The parties' Property Settlement and Separation Agreement ("Agreement") provided in pertinent part:

### Maintenance:

Wife shall receive the following as non-modifiable maintenance payments during her lifetime:

---

1. All statutory references are to Revised Statutes of Missouri, 2000, unless otherwise noted.

(a) Sixty (60) consecutive monthly payments, beginning May 1, 1994 of One Thousand Two Hundred Dollars ($1,200.00) each, and on the 1st day of each month thereafter.

(b) Beginning May 1, 1999, Sixty (60) consecutive monthly installments of Eight Hundred Dollars ($800.00) per month, and on the 1st day of each month thereafter.

(c) From and after May 1, 2004, monthly installments of Five Hundred Dollars ($500.00) per month.

Husband does further agree and does bind his estate, his heirs, executors and assigns, to pay to Wife, in the event of his demise within the first nine (9) years of maintenance payments the following lump sum settlement in lieu of monthly payments above:

If death occurs within 1st year—$85,000.00
If death occurs within 2nd year—$75,000.00
If death occurs within 3rd year—$65,000.00
If death occurs within 4th year—$55,000.00
If death occurs within 5th year—$50,000.00
If death occurs within 6th year—$40,000.00
If death occurs within 7th year—$30,000.00
If death occurs within 8th year—$20,000.00
If death occurs within 9th year—$10,000.00

The trial court's Judgment Entry and Order approved and incorporated, *inter alia*, the terms of the Agreement's maintenance provisions, stating:

"[A]ll of the terms and conditions thereof including the provisions binding Petitioner's estate to pay lump sum maintenance after the demise of Petitioner are hereby incorporated herein."

On February 24, 2007, Mr. Mackie died intestate. Ms. Mackie filed a claim against his estate seeking maintenance payments of $500 per month, from March 2007 until her death. After Appellant filed an objection to Ms. Mackie's claim against the estate, the probate division of the Circuit Court of Morgan County held a hearing.

At the hearing, the court heard evidence regarding the parties' separation agreement. The personal representative for the estate testified he believed the agreement lacked "any language regarding the maintenance that says it proceeds beyond Mr. Mackie's death." The court disagreed, however, finding the intent of the parties, "as clear from the documentation, [was] that this [maintenance] would continue past Mr. Mackie's death," and finding "the intent of Mr. Mackie was to bind his estate to pay [Ms. Mackie] as long as she was alive." Accordingly, on October 25, 2007, the court entered judgment in favor of Ms. Mackie against the estate of Mr. Mackie. This appeal followed.

### Standard of Review

A judgment entered by the probate division of the circuit court is reviewed under the standard established in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Ryan v. Spiegelhalter*, 64 S.W.3d 302, 305 (Mo. banc 2002). We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

This case requires us to interpret the parties' separation agreement, a contract to which general rules of contract construction apply. *Schottel–Lehde v. Schottel*, 75 S.W.3d 359, 363 (Mo.App. W.D. 2002). Contract interpretation is generally a question of law. *Id.* When the language of a provision is in dispute, the court must determine the parties' intent as manifested in the document itself, giving the words of the agreement their plain and ordinary meaning. *Id.* Moreover, " 'A court will not resort to rules of contract construction to interpret a contract where the contract by its terms is unambiguous.' " *Id.* (quoting *Daily v. Daily*, 912 S.W.2d 110, 114 (Mo. App. W.D.1995)).

### Analysis

On appeal, Mr. Mackie's estate claims the trial court erred in allowing Ms.

Mackie's claim for maintenance against the estate. Ms. Mackie maintains the Agreement "clearly provides that maintenance payments are to continue beyond the death of decedent." The trial court agreed, based on its interpretation of the language of the Agreement.

The estate contends the obligation to pay Ms. Mackie maintenance terminated by operation of law pursuant to section 452.370.3 upon Mr. Mackie's death. Section 452.370.3 provides:

Unless otherwise agreed in writing or expressly provided in the judgment, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

Under the plain and ordinary terms of section 452.370.3, the parties' failure to expressly include terms to the contrary precludes collection of maintenance after the death of either party. *See Perkinson v. Perkinson*, 869 S.W.2d 170, 172 (Mo. App. E.D.1993).

■ In *Cates v. Cates*, the Missouri Supreme Court held that section 452.370.3 [2] "creates a rebuttable presumption that the obligation to pay statutory maintenance terminates upon the remarriage of the receiving party or the death of either party." 819 S.W.2d 731, 734 (Mo. banc 1991). The presumption is rebutted by: (1) the parties' agreement in writing that the obligation to pay statutory maintenance extends beyond remarriage or death, or (2) the court's decree of dissolution expressly extending the obligation to pay future statutory maintenance beyond the death of either party or the remarriage of the receiving party. *Id.* To date, no Missouri cases specifically interpret the provision of section 452.370.3 regarding death of one of

the parties. However, *Cates* and subsequent cases discuss section 452.370.3 as it relates to termination of maintenance upon remarriage, and this court finds the interpretation equally applicable to termination upon death.[3]

Ms. Mackie claims the presumption of termination was rebutted in this case because the parties "otherwise agreed in writing" that maintenance would continue for her lifetime. *See Tucker v. Tucker*, 124 S.W.3d 16 (Mo.App. W.D.2004). Specifically, she relies on language in the Agreement providing for maintenance payments "during her lifetime," which she claims rebuts the presumption of termination.

■ We disagree. The phrase "during her lifetime" appearing in the Agreement and the court's decree is not sufficient to rebut the presumption of section 452.370.3 that Mr. Mackie's obligation to pay maintenance terminated upon his death. *See Tucker*, 124 S.W.3d at 19 (holding that separation agreement's qualification of maintenance obligation as "non-dischargeable" was not sufficient to prove the parties "otherwise agreed in writing" that maintenance was to survive remarriage). To rebut the presumption of termination, the parties must clearly and expressly agree in writing or the court's dissolution decree must expressly state that the obligation to pay future statutory maintenance extends beyond the death of either party. *Cates*, 819 S.W.2d at 734. The unambiguous language of section 452.370.3 "clearly put careful drafters on notice that if the parties so intend ... the parties must state such intent in writing or the court's decree must expressly provide the maintenance obligation extends beyond remar-

---

**2.** The court interpreted 452.370.2, RSMo 1986, provisions now appearing as subsection 452.370.3.

**3.** *See also Altmann v. United States*, No. 4:00CV669 DDN, 2001 WL 1750768, at *7 n. 4 (E.D.Mo. Sept. 30, 2001).

riage or death." *Tucker*, 124 S.W.3d at 19 (citation and quote marks omitted). Thus, the critical issue in the instant case is interpretation of the parties' written agreement and the court's decree.

As noted above, we review the language for its plain and ordinary meaning. Express and specific language exists where the "language of the Order and Decree makes it abundantly clear" and where "[to] find otherwise would be a clear subversion of the parties' intent, which is unmistakably evidenced by the express language of the Order and the Decree." *See Barbeau v. Barbeau*, 72 S.W.3d 227, 230 (Mo.App. E.D.2002). In the case *sub judice*, the language of the court's decree referring to payment of lump sum maintenance by the estate, without referring to any other obligations to be paid by the estate, is dispositive evidence of the parties' intent that *only* the lump sum provisions would bind the estate. *See id.*

This conclusion is bolstered by examining cases where sufficient express language existed to rebut the presumption. Such an example is *Unterreiner v. Estate of Unterreiner*, where the recorded stipulation unambiguously stated the maintenance continued "no matter what happens over the next five years," "regardless of any circumstances," and "no matter what … happens to [husband]." 899 S.W.2d 596, 601 (Mo.App. E.D.1995)(holding that although neither party used the word "death" or "termination," there was no error in trial court's determination that the judgment intended maintenance to continue past the death of husband).

Neither the Agreement at issue nor the court's decree meets this standard for an express provision. The language of the decree incorporates all of the terms and conditions of the Agreement, including specific reference to the "provisions binding [Mr. Mackie]'s *estate* to pay lump sum maintenance *after the demise of [Mr. Mackie].*" (Emphasis added.) However, the decree refers only to the "lump sum settlement in lieu of monthly payments" that are contingent upon Mr. Mackie's death within the first nine years of maintenance payments (i.e. from May 1, 1994, to May 1, 2003). The provision binding Mr. Mackie's estate to pay a lump sum does not expressly reference the monthly payments. The provision extending lump sum payments specifically is not sufficient to extend the obligation to pay monthly installments beyond Mr. Mackie's death. *See Tucker*, 124 S.W.3d at 19.

The Agreement specifies that the estate is bound to pay if Mr. Mackie dies within the first nine years of maintenance payments, but there is no reference to the parties' intent to bind the estate to pay monthly installments. Instead, the agreement is "silent" on what is to occur under these circumstances, and "where the decree and agreement are silent, there is nothing to rebut the statutory presumption of termination." *Glenn v. Snider*, 852 S.W.2d 841, 843 (Mo. banc 1993).[4] Thus, there is "nothing in the decree or in the agreement which avoids the clear application of [section 452.370.3] to make the payments terminable on [Mr. Mackie's] death." *See Altmann v. U.S.*, 2001 WL 1750768 at *7. Appellant correctly concludes that *the estate* was only bound to pay Ms. Mackie should Mr. Mackie die during the first nine years of maintenance payments.

The trial court determined the Agreement was not ambiguous. Thus, the trial court was bound to ascertain the parties'

---

4. Indeed, by specifying how Mr. Mackie's maintenance obligation would be discharged if he died within the first nine years, one could plausibly argue that the agreement reflects the parties' affirmative intent that maintenance would *not* continue if Mr. Mackie died at a later time.

intent as manifested in the document itself, according to the plain and ordinary meaning of the language used. *Schottel–Lehde,* 75 S.W.3d at 363. However, the trial court acknowledged that it was "maybe going extrinsic" and looking "beyond the face" in its interpretation.

The trial court erroneously applied the law in allowing Ms. Mackie's maintenance claim against the estate. Because the presumption of termination in section 452.370.3 was not rebutted, Mr. Mackie's maintenance obligation terminated upon his death. Accordingly, the judgment is reversed and the cause remanded for entry of judgment consistent with this opinion.

All concur.