**Joseph Lee MADDICK, Respondent,**

v.

**Roberta (Sue) Ann DESHON, (Formerly Roberta (Sue) Ann Maddick), Appellant.**

**No. WD 70335.**

Missouri Court of Appeals, Western District.

Nov. 10, 2009.

Jennifer S. Wagner, Esq., Liberty, MO, for appellant.

Scott L. Campbell, Esq., Platte City, MO, for respondent.

Before: ALOK AHUJA, P.J., and JAMES M. SMART, JR. and LISA WHITE HARDWICK, JJ.

ALOK AHUJA, Judge.

Roberta DeShon (formerly Maddick) appeals the trial court's judgment granting Joseph Maddick's motion to modify the decree dissolving their marriage to expressly terminate Mr. Maddick's maintenance payments to Ms. DeShon upon her remarriage. The judgment is affirmed.

## Factual Background

Respondent Joseph Maddick ("Husband") and Appellant Roberta DeShon ("Wife") were married in July 1983. Their marriage was dissolved in October 2003. The judgment included a provision requiring Husband to pay Wife periodic, modifiable maintenance of $500 per month.

A year later, the parties entered into a stipulation to modify the judgment. The parties agreed that the child of the marriage had become emancipated. The parties also agreed that Wife's expenses had increased. The stipulation also provided:

> The parties agree that the periodic modifiable maintenance should be increased to the amount of Seven Hundred Fifty Dollars ($750.00) per month, effective September 1, 2004, for a period of seven (7) years as non-modifiable con-

tractual maintenance.... *The maintenance obligation herein should terminate upon Respondent's death.*

(Emphasis added.)

On October 26, 2004, the court entered a modified judgment setting forth the stipulation. The court then decreed:

That the Petitioner shall pay to Respondent the sum of Seven Hundred Fifty Dollars ($750.00) per month for non-modifiable contractual maintenance. Said payments shall commence September 1, 2004, for a period of seven (7) years as non-modifiable contractual maintenance.... *Said maintenance obligation shall only terminate upon the death of Respondent or September 30, 2011, whichever occurs first.*

(Emphasis added.)

Wife remarried on September 29, 2007. Shortly thereafter, Husband filed a motion to again modify the dissolution decree. He alleged that Wife's remarriage constituted a substantial and continuing change of circumstances, and sought to have his maintenance obligation terminated as of the date of Wife's remarriage.

After hearing evidence in September 2008, the circuit court entered its Judgment Modifying Decree of Dissolution of Marriage. The court sustained Husband's motion to terminate maintenance after finding "that there was no written agreement or court order extending [Husband's] obligation to pay maintenance past the date of [Wife's] remarriage."

Wife appeals.

### Standard of Review

As in any court-tried case, the judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or misapplies the law. *Tucker v. Tucker*, 124 S.W.3d 16, 18 (Mo.App.2004)

(*citing Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

### Analysis

The issue in this case is whether the parties' written stipulation or the October 2004 modified judgment rebuts the statutory presumption, created by § 452.370.3,[1] that maintenance terminates upon the receiving spouse's remarriage. Wife contends that the unambiguous language of both the stipulation and the modified judgment rebuts the statutory presumption and obligates Husband to continue paying maintenance despite her remarriage. Alternatively, Wife argues that the language in the stipulation was ambiguous, and that the court erred in excluding extrinsic evidence that would have resolved the ambiguity.

█ Section 452.370.3 provides in relevant part:

Unless otherwise agreed in writing or expressly provided in the judgment, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

This section "creates a rebuttable presumption that the obligation to pay statutory maintenance terminates upon the remarriage of the receiving party or the death of either party." *Cates v. Cates*, 819 S.W.2d 731, 734 (Mo. banc 1991).

Wife claims that the § 452.370.3 presumption was sufficiently rebutted here, because: (1) the judgment specifically stated that *only* two events would result in termination of the contractual, non-modifiable maintenance, and neither of those events (the expiration of time or Wife's death) has occurred; and (2) the parties' stipulation specified the events that would terminate maintenance, and remarriage was not one of them. We disagree.

---

1. Statutory references are to the Revised Statutes of Missouri (RSMo) 2000.

## I.

■ Wife emphasizes that the modified judgment expressly sets forth the "only" two events which would terminate Husband's maintenance obligation. She argues that the court expressly provided the exclusive circumstances which would terminate Husband's maintenance obligation, and thereby excluded Wife's remarriage as a termination event. Thus, according to Wife, the judgment "expressly provides" that maintenance will *not* terminate upon her remarriage.

Wife's argument is not without force. The trial court's modified judgment purports to specify the "only" events which will terminate Husband's obligation to pay maintenance. By expressly (and seemingly exhaustively) cataloguing the circumstances in which maintenance will terminate, and including in that listing only one of the three termination events listed in § 452.370.3, it is at least arguable that the court "expressly provided otherwise" than the presumptive statutory scheme (under which maintenance terminates on the death of either spouse, or the recipient spouse's remarriage).

We do not write on a blank slate, however. Despite the appeal of Wife's argument, we believe it is foreclosed by controlling Missouri decisions construing § 452.370.3. While none of those cases involves language of a decree purporting to identify the "only" circumstances in which maintenance will terminate, their reading of § 452.370.3 requires a decree to expressly extend maintenance beyond remarriage before the statutory presumption is defeated. Giving the language of those cases its plain meaning, a decree must expressly and affirmatively provide that maintenance continues beyond the events listed in § 452.370.3, or else the occurrence of those events will terminate the paying spouse's obligations.

Thus, in *Cates*, the Missouri Supreme Court interpreted § 452.370.3 to provide that the statutory presumption is rebutted "by a decree of dissolution *expressly extending the obligation to pay future statutory maintenance beyond* the death of either party or *the remarriage of the receiving party*." 819 S.W.2d at 734 (emphasis added); *id.* at 736 (finding statutory presumption unrebutted where "[w]e find no language in [the decree] *expressly* extending Larry's obligation to continue the monthly payments due on the maintenance in gross award beyond Rochelle's remarriage").

Two years later, the Supreme Court interpreted *Cates* as holding that, "[b]ecause the decree and separation agreement *did not address the effect of remarriage*, this Court ... concluded that the statute should control and that the payments should terminate." *Glenn v. Snider*, 852 S.W.2d 841, 843 (Mo. banc 1993) (emphasis added).

Later appellate decisions repeat *Cates'* reading of § 452.370.3: a dissolution decree must expressly provide that maintenance continues beyond the receiving spouse's remarriage or the death of either spouse in order to defeat the statutory presumption:

- "To rebut the presumption of termination, the parties must clearly and expressly state in writing or the court's dissolution decree must expressly state that the obligation to pay future statutory maintenance extends beyond the death of either party." *Estate of Mackie*, 261 S.W.3d 728, 731 (Mo.App. W.D.2008).[2]

---

2. As *Mackie* recognizes, the provisions of § 452.370.3 relating to termination of maintenance on the death of either spouse should be interpreted in the same fashion as the provi-

- "*Cates* and subsequent cases discussing the 'unambiguous language' of section 452.370.3 clearly put 'careful drafter[s]' on notice that if the parties so intend, section 452.370.3 requires that the parties must state such intent in writing or the court's decree must expressly provide the maintenance obligation extends beyond remarriage or death." *Tucker v. Tucker,* 124 S.W.3d 16, 19 (Mo.App. W.D.2004) (holding presumption unrebutted where decree did not "expressly provide that the maintenance obligation was to survive Laurie's remarriage").

- "Where the decree and separation agreement are silent with respect to the effect of remarriage on the maintenance obligation, no further inquiry into the intent of the parties concerning maintenance is permitted; the statute controls and the obligation is terminated." *Reeves v. Reeves,* 890 S.W.2d 369, 372 (Mo.App. E.D.1994) (finding presumption unrebutted where "nowhere in the parties' decree or separation agreement is there any reference to the effect of wife's remarriage on husband's maintenance obligation").[3]

As we read these plain (and repeated) holdings, in order to rebut the statutory presumption that maintenance terminates upon the receiving spouse's remarriage, a dissolution decree must expressly refer to the receiving spouse's possible future remarriage, and must expressly provide that maintenance payments shall continue beyond that contingency.

Although not dispositive, this reading of § 452.370.3 is confirmed by the uniform statute from which the Missouri provision is derived, and by cases from other jurisdictions which have adopted similar provisions. The relevant language of § 452.370.3 is adopted from § 316(b) of the Uniform Marriage and Divorce Act, 9A Part II U.L.A. 102 (1998). The comment to § 316(b) makes clear that the statutory presumption will only be defeated by an affirmative statement in a dissolution decree extending maintenance beyond remarriage or death:

> Subsection (b) authorizes the parties to agree in writing or the court to provide in the de[c]ree that maintenance will continue beyond the death of the obligor or the remarriage of the obligee. In the absence[ ] of such an agreement or provision in the decree, this section

sion terminating maintenance on the receiving spouse's remarriage. 261 S.W.3d at 731.

3. We note that *Desloge v. Desloge,* 617 S.W.2d 486 (Mo.App. E.D.1981), holds that a provision of a settlement agreement providing that maintenance "shall terminate upon ... Wife's death" did not defeat the statutory presumption, since "neither an implied agreement nor an exclusionary inference can satisfy the [statutory] dictate ... and prevent termination of the maintenance obligation after remarriage." *Id.* at 488. This aspect of *Desloge* was rejected in *LaBarge v. Berndsen,* 681 S.W.2d 441 (Mo. banc 1984), which held that, "[w]here the implication or inference creates a reasonable ambiguity with respect to non-termination on the order of that present here, the completeness and integration of the agree-

ment will not prevent resort to extrinsic evidence in order to determination the parties' true intent." *Id.* at 445. In *Glenn v. Snider,* 852 S.W.2d 841 (Mo. banc 1993), however, the Supreme Court overruled *LaBarge* on this point:

> In *Cates,* ... this Court tacitly rejected the rationale of *LaBarge* by holding that an agreement that is silent on the issue of remarriage is not ambiguous. In other words, where the decree and agreement are silent, there is nothing to rebut the statutory presumption of termination. To the extent *LaBarge* holds otherwise, it is overruled.

*Id.* at 843 (citations omitted). It appears that in the wake of *Glenn v. Snider* and *Cates, Desloge's* statement that "an exclusionary inference" cannot satisfy § 452.370.3 once again correctly states Missouri law.

sets the termination date for the obligation to pay future maintenance.

*Id.* at 103.

Cases from other jurisdictions which have adopted § 316(b) reach the same result: a decree must expressly provide that maintenance continues despite the receiving spouse's remarriage in order to defeat the presumptive termination of maintenance at that time.[4] Although our research concerning out-of-state caselaw has not been exhaustive, we note that at least one such decision involves decretal language bearing a striking similarity to the language at issue here. In *In re Marriage of Roth,* 72 Wash.App. 566, 865 P.2d 43 (1994), a divorce decree provided that "[o]nly in the event of the death of either the Respondent or Petitioner prior to June 15, 1993 shall this obligation to pay spousal maintenance terminate." *Id.* at 45 n. 1. Like here, the receiving spouse argued "that the word 'only' clearly and unambiguously excludes any event other than death from terminating spousal support." *Id.* at 46. The court rejected this argument, relying on the holding of an earlier Washington Supreme Court decision: "'In the hopes of discouraging dubious interpretation of questionable decretal language, we hold ... that the decree must specifically mention remarriage in order to overcome the presumption. Specific decretal language means just that.'" *Id.* (quoting *In re Marriage of Williams,* 115 Wash.2d 202, 796 P.2d 421, 425 (1990)). Thus, under Washington law, "[the statute] mean[s] just what [it] say[s]: 'express provision' means use of the word 'remarriage,'" *id.;* the statute "require[es] the specific mention of remarriage to continue spousal support beyond remarriage." *Id.* at 45. *Roth* concluded that a decree specifying that maintenance would terminate "[o]nly in the event of the death of either [party]" did not meet this standard: "Here, neither the dissolution agreement nor any other agreement provides that maintenance is to continue past remarriage; remarriage therefore terminated the obligation." *Id.* at 46. *See also Hardesty v. Hardesty,* 40 Va.App. 663, 581 S.E.2d 213, 216–17 (2003) (en banc) (language of property settlement agreement that maintenance "cannot be terminated for any reason" insufficient to rebut statutory presumption).

*Unterreiner v. Estate of Unterreiner,* 899 S.W.2d 596 (Mo.App. E.D.1995), does not require a different result. In *Unterreiner,* following the death of the hus-

***

4. *See, e.g., Palmer v. Palmer,* 217 Ariz. 67, 170 P.3d 676, 679 (2007) ("Under the plain language of [the statute], ... an obligation to continue paying spousal maintenance will be terminated upon the remarriage of the spouse receiving the payments unless the decree distinctly expresses, without the need of implication or inference, that the spousal maintenance will continue notwithstanding remarriage."); *Messer v. Messer,* 134 S.W.3d 570, 573 (Ky.2004) ("We conclude that·absent a specific statement in the written agreement or in the decree that maintenance will not terminate upon the death of either party or the obligee's remarriage, the occurrence of one of those statutory contingencies terminates the maintenance obligation by operation of law."); *Moore v. Jacobsen,* 373 Md. 185, 817 A.2d 212, 215 (2003) ("We think a bright-line rule requiring an express provision providing that support shall not terminate upon remarriage fosters certainty, resolves ambiguity and reduces litigation. 'To permit [the statute's] mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose.'" (citation omitted)); *MacNelly v. MacNelly,* 17 Va.App. 427, 437 S.E.2d 582, 584 (1993) ("[W]e hold that, in order to accomplish the stated objective of the statute to resolve ambiguity and thereby reduce litigation, any attempt to abrogate the effect of the statute requires express language either citing the statute or expressly stating that remarriage does not terminate the obligation."). *Palmer, Messer,* and *Moore* collect additional cases from other jurisdictions reaching the same result.

band/payor spouse, the trial court entered a *nunc pro tunc* amendment of a dissolution decree to expressly provide that maintenance would not terminate on husband's death. The circuit court justified the *nunc pro tunc* modification based on testimony by both spouses prior to the entry of the original decree. In that testimony, the parties testified that they had agreed that wife's maintenance would be payable to wife "no matter what happens over the next five years," and "regardless of any circumstances over the next [five] years"; husband had expressly agreed that the maintenance would be payable to wife "no matter what she does or what happens to you, or any change of circumstances on your part or her part, remarriage or anything." *Id.* at 600. A colloquy with the court also indicated that the parties understood the distinction between modification by the court or instead "by statute," and intended to negate modification by either mechanism. *Id.* The Eastern District affirmed the *nunc pro tunc* amendment of the judgment.

In *Unterreiner*, the parties' pre-judgment testimony did not specifically refer to the contingency of husband's death. However, the question before the court was not whether the parties' testimony itself satisfied § 452.370.3; instead, the issue was whether that testimony was sufficient to support a *nunc pro tunc* modification of the judgment. Indeed, the fact that wife sought such a *nunc pro tunc* modification presumably reflected her understanding that, under § 452.370.3, it was necessary for the written judgment to expressly provide that maintenance would continue beyond her ex-husband's death for her to continue to receive it. The phrasing of the parties' testimony in *Unterreiner* cannot be used as a reliable guide for the written language necessary in a dissolution decree

to defeat the § 452.370.3 presumption. (This is confirmed by the fact that, although *Unterreiner* cited § 452.370.3 as the reason wife sought a *nunc pro tunc* modification of the judgment, it did not cite *Cates* or other decisions concerning the judgment language necessary to overcome the § 452.370.3 presumption.)

In this case, the October 2004 modified judgment did not refer to remarriage. We recognize that the court's statement that Husband's "maintenance obligation shall only terminate upon the death of [Wife] or September 30, 2011" supports *an inference* that the court intended that no other event would terminate Husband's obligation. Nonetheless, such an inference cannot satisfy the requirement that a decree of dissolution "expressly extend[ ] the obligation to pay future statutory maintenance beyond . . . the remarriage of the receiving party." *Cates*, 819 S.W.2d at 734.

The Supreme Court made the following cautionary observation in *Cates*, which has been repeated in later cases: "Given the unambiguous language of [§ 452.370.3], it is difficult to imagine that the careful drafter would fail to state the intent of the parties when failure to do so results in termination of maintenance." 819 S.W.2d at 738. That admonition is as apt today as it was eighteen years ago.

## II.

■ Wife also relies on the parties' 2004 stipulation to establish her continued right to maintenance. Paragraph 9 of that stipulation contains the following handwritten revision:

> The maintenance obligation herein should terminate upon [Wife's] death, ~~remarriage or cohabitation to person to whom she is not related, or the death of Petitioner.~~ [initials of the parties] [5]

5. At the hearing on the motion to modify, Husband denied that he initialed the redac-

tion. That assertion has no bearing on our resolution of this case.

Wife contends that the striking of language which would have expressly terminated her right to maintenance upon remarriage shows that the parties "agreed in writing" to the converse: that Husband's maintenance obligation would extend beyond Wife's remarriage and terminate only upon her death. The court addressed, and rejected, just such a "negative inference" from stricken language in *Gateway Frontier Properties, Inc. v. Selner, Glaser, Komen, Berger & Galganski, P.C.*, 974 S.W.2d 566 (Mo.App. E.D.1998):

> Whether or not language stricken from an unambiguous, integrated contract constitutes extrinsic evidence which may not be considered in its interpretation apparently has not been addressed in Missouri.... However, the majority of other jurisdictions considering the issue have held that stricken language is extrinsic and may not be resorted to in construing an integrated, unambiguous contract. The rationale underlying the rule is that the writing excised from the agreement, whether by way of striking, erasing, or simply transferring the agreement to a new piece of paper without the stricken language, is not part of the agreement between the parties. Here, the trial court and the parties agreed that the guaranty was not ambiguous, therefore the trial court erred in resorting to the stricken language.

*Id.* at 570–71 (citations omitted).

Under *Gateway*, the stricken language is not part of the parties' stipulation, and cannot be used to create an ambiguity in the remaining language of paragraph 9 (even assuming that both parties agreed to the strikeout). Before we could turn to the stricken language to assist in construing the parties' stipulation, we would first have to find that the surviving text of the stipulation was ambiguous. But there is nothing ambiguous about the language the parties employed in paragraph 9 (ignoring the stricken language): that language provides, plainly and simply, that Husband's maintenance obligation would terminate upon Wife's death. Paragraph 9 is perfectly intelligible without consideration of extrinsic evidence. The Supreme Court has held that "an agreement that is silent on the issue of remarriage"—like the stipulation in the present case—"is not ambiguous," and therefore no resort to extrinsic evidence is appropriate. *Glenn v. Snider*, 852 S.W.2d at 843. The stipulation's failure to expressly extend Husband's maintenance obligation beyond Wife's remarriage makes it insufficient to rebut the statutory presumption. *Id.*[6]

### Conclusion

The judgment is affirmed.

All concur.

---

**6.** Because no reference to extrinsic evidence is appropriate, we deny as moot Husband's motion to strike portions of Wife's brief which he claims refer to materials outside the record.